(No. 12701.—Reversed and remanded.)

Laura H. McKaig et al. Plaintiffs in Error, vs. Ebenezer Appleton et al. Defendants in Error.

*Opinion filed October 27, 1919.*

1. Wills—*when allegations relating to undue influence should not be stricken.* Allegations relating to undue influence should not be stricken from a bill because they contain recitals of evidentiary facts, where the allegations, in effect, charge that the execution of the will was procured by the undue influence of one of the principal beneficiaries and where most of the evidentiary facts alleged are competent to be proved on the trial.

2. Same—*fact that attorney who drew will is subscribing witness does not affect weight of testimony.* The fact that one of the subscribing witnesses to the will in contest was the attorney who prepared the will and the other witness was an employee of said attorney is not a matter to be considered by the jury in determining the weight to be given their testimony.

3. Same—*what letters should not be admitted in evidence in a will contest case.* In a will contest case, letters purporting to have been sent by the testator to a distant relative and friend are not admissible, where it is admitted that the testator was practically blind when the letters were written and was unable to read or write and it is not shown that he dictated the letters or that they were read to him; and letters from said friend to the testator are likewise not admissible, where it is not shown that the testator ever received them or that they were read to him.

Writ of Error to the Second Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. Thomas G. Windes, Judge, presiding.

William Ritchie, and King, Brower & Hurlbut, for plaintiffs in error.

Holt, Cutting & Sidley, (Charles S. Cutting, of counsel,) for the Chicago Title and Trust Company and other defendants in error.

STEIN, MAYER & DAVID, (SIGMUND W. DAVID, of counsel,) for defendant in error Mary A. Cornish.

Mr. JUSTICE FARMER delivered the opinion of the court:

This case comes before this court upon a petition for a writ of *certiorari* to review a judgment of the Appellate Court affirming a decree of the circuit court in a will contest proceeding. Plaintiffs in error were complainants in the trial court and sought to set aside the alleged last will and codicil of George R. H. Hughes, on the grounds that he was not of sound mind and memory at the time the alleged will and codicil were executed and that he was unduly influenced to execute said instruments by Mary A. Cornish, who was a substantial beneficiary.

The will was executed March 26, 1913, and the testator died June 22, 1914, at the age of about eighty-three years. For several years prior to his death his eyesight had been failing him and for some years he was practically blind, being wholly unable to read or write. He left no widow, child or descendants of child, but left a half-sister, Laura H. McKaig, a nephew, William C. Boteler, and two nieces, Mary Boteler Beckley and Laura Boteler, as his next of kin and only heirs, who are the complainants in the bill. The testator owned no real estate, his property consisting principally of a note for $44,000, secured by a mortgage upon real estate. The Chicago Title and Trust Company was named as trustee in the will and given power to collect, invest and re-invest the property and income during the lifetime of the several annuitants named. The half-sister, Laura H. McKaig, was given $300 per annum during her life; the niece, Laura H. Boteler, $200 per annum; Anna Beckwith Hammel $500 per annum; Nellie Sans $200 per annum, and Mrs. Cornish $800 per annum. The will provided that in case of the death of any one or more of the four annuitants other than Mrs. Cornish, before her death, the annuities directed to be paid such deceased annuitants

be paid Mrs. Cornish during her life in addition to the annuity of $800 directed to be paid her. Upon the death of all the annuitants the trustee was directed to deliver all that remained of the estate to Harrison B. Riley, of Evanston, and Richard H. Pleasants, of Baltimore, Maryland, to become a fund to be known as the Hughes Fund, to be used by said trustees for such educational and charitable purposes in Baltimore and Chicago as they should designate, but in case that provision of the will should be held invalid, then the remaining estate in the hands of the Chicago Title and Trust Company at the death of the last annuitant was to be distributed among the testator's lawful heirs, excluding his nephew, William C. Boteler, and his niece, Mary Boteler Beckley. The distribution, excluding said nephew and niece, was to be made in accordance with the statute of the State of Illinois. A codicil to the will, dated January 6, 1914, states that the annuitant Mrs. Hammel had died since the execution of the will, and the annuity to Mrs. Cornish was increased to $1300. The codicil further changed the disposition of the estate remaining after the death of all the annuitants by directing payment to St. Paul's Reformed Episcopal Church of $5000, to the Scroll and Key Society of Yale College $5000, and to a nephew, Reginald Hughes McKaig, $1000, the remainder to go to the same trustees, to be administered as provided in the original will.

The testator for some time had lived in and occupied a room in a rooming house, and Mrs. Cornish had for several years been his attendant and nurse, caring for both his person and room. Her practice appears to have been to visit Hughes in his room some time during the forenoon and remain with him until some time during the afternoon, during which time she was employed in such services as were needed by Hughes or his room. She also prepared his meals while in his room.

The bill alleged, in substance, that Hughes was eighty years old, blind and diseased; that he was under the domi-

nation of Mrs. Cornish, whose care he had required for a long time by reason of his physical and mental condition; that Mrs. Cornish was a person of a dominant and insistent character and Hughes was a person of a weak and feeble will; that a confidential relation existed between Mrs. Cornish and Hughes, she being the dominant and he the dependent party, and that the alleged will and codicil were procured to be made by Mrs. Cornish and others acting in concert and confederation with her. The bill with considerable particularity and elaboration set out the alleged facts and circumstances and relationship upon which the charge of undue influence was predicated, and alleged that Mrs. Cornish importuned Hughes to execute the instruments, threatening to desert and leave him if he refused to do so; that the only persons Mrs. Cornish permitted to be present at the time said instruments were executed were the attorney who drew the will and his confidential clerk, both of whom signed it as attesting witnesses. Some of the defendants, not including Mrs. Cornish, filed exceptions to the parts of the bill alleging undue influence, on the ground that said allegations were impertinent, and asked that they be expunged. The court sustained the exceptions and expunged the allegations from the bill relating to undue influence. Mrs. Cornish had answered the bill, denying the allegations of undue influence and lack of testamentary capacity, before the ruling of the court sustaining the exceptions, and after that ruling the other defendants who were not defaulted answered, denying want of testamentary capacity. At the conclusion of proponents' evidence in chief the contestants presented and asked leave of court to file an amendment to the bill charging the will and codicil were procured through the exercise by Mrs. Cornish of undue influence over the testator, which undue influence was operative at the time said instruments were executed. The court denied leave to amend, and at the conclusion of all the evidence instructed the jury there was

no question of undue influence before them, and that the
question to be determined by them was whether, at the time
of executing said will and codicil, the testator was of sound
mind and memory.

Numerous errors are assigned why the judgment of the
Appellate Court and the decree of the circuit court should
be reversed, but it will not be necessary to consider all of
them.

One of the grounds urged for a reversal is the ruling
of the court in sustaining the exceptions and expunging
from the bill the allegations relating to undue influence.
The exceptions set out *in hæc verba* the portions of the bill
excepted to, and alleged they are impertinent and ought to
be expunged. The order of the court sustaining the excep-
tions and ordering the parts of the bill excepted to stricken
out, states "they are recitals of evidence instead of proper
pleading of ultimate facts proposed to be proven." Con-
ceding that some of the allegations of the bill on the charge
of undue influence were recitals of evidence and immaterial,
as contended by proponents, the bill did allege that because
of the physical and mental condition of the testator Mrs.
Cornish had been his nurse and attendant for more than
two years before the will was executed; that she was of
a dominating and insistent character and the testator was
of weak and feeble will, yielding to importunity; that Mrs.
Cornish had intimate knowledge of the testator's business,
property and affairs and acted as his agent in collecting
moneys due him, and that she and others acting in concert
with her procured the execution of the will and codicil by
importunity, and that she threatened to desert and leave the
testator if he refused to execute said instruments. That,
in substance and effect, is a charge that the execution of
the will was procured by the undue influence of one of the
principal beneficiaries, and the fact that other and eviden-
tiary facts may also have been alleged did not affect the bill
as a good pleading, especially as the facts alleged, or most

of them, were competent to be proved on the trial. (Story's Eq. Pl. sec. 268; *Kirkpatrick* v. *Corning,* 40 N. J. Eq. 241; *Burden* v. *Burden,* 124 Fed. Rep. 250; *United States* v. *Hyde,* 145 *id.* 393.) The court erred in sustaining the exceptions to the allegations of undue influence, and by refusal to permit the bill to be amended on the trial contestants were prevented from trying that issue. This requires a reversal of the judgment of the Appellate Court and decree of the circuit court.

The rulings of the court in giving and refusing certain instructions are complained of. We do not deem it necessary to discuss all these errors, as the alleged inaccuracies, in view of the discussions in the briefs and authorities cited, may be easily avoided on another trial.

The action of the court in refusing one instruction asked by contestants should be referred to. The will was witnessed by the attorney who drew it, and his stenographer. Said attorney had represented Hughes as counsel previous to the execution of the will and was well acquainted with him. He appeared for the will as counsel in securing its admission to probate. After the bill to contest it was filed, in July, 1915, he entered his appearance as attorney for proponents and rendered active services in their behalf. On behalf of the executor and one of the trustees he filed exceptions to parts of the bill and secured an order sustaining them. He continued to act as counsel, as we understand, until May, 1916, when he withdrew and present counsel have since represented the proponents. The cause was tried in February, 1917, and at the trial said attorney became a witness and testified at length in proponents' behalf. Contestants asked the court to instruct the jury that the law does not favor an attorney who has drawn a will subscribing it as a witness, and that in determining the credibility of the subscribing witnesses to the will and the weight to be given their testimony the jury should take into consideration the fact that one of said witnesses was the attorney

who prepared the will and the other witness was, and still is, an employee of said attorney. Our attention has not been called to any decision of this court that it is not proper for an attorney who draws a will to attest it as a witness, but we have frequently expressed the court's view of the propriety of an attorney in a case becoming a witness and testifying on behalf of the clients he represented and the effect of his relation to the case upon the weight to be given his testimony. (*Wilkinson* v. *People*, 226 Ill. 135; *Bishop* v. *Hilliard*, 227 id. 382; *Grindle* v. *Grindle*, 240 id. 143; *Wetzel* v. *Firebaugh*, 251 id. 190; *Bailey* v. *Beall*, id. 577.) It was not error to refuse the instruction in the form in which it was prepared and asked.

It is also contended the court erred in admitting in evidence three letters purporting to be from Hughes to Richard H. Pleasants, a distant relative and friend residing in Baltimore, and two letters from Pleasants to Hughes. It is not claimed by proponents that any of the letters purporting to be from Hughes to Pleasants were in Hughes' handwriting. Hughes was practically blind when they were written and was unable to read or write. There was proof that Mrs. Cornish did his writing and that he would dictate to her and she would write it in longhand. All of the Hughes letters were written by Mrs. Cornish, and in addition to subscribing Hughes' name to them, her own name is subscribed as the writer of them. It was not shown that Hughes did, in fact, dictate the letters purporting to be written by him or that their contents were ever read to him. Pleasants testified to writing the two letters to Hughes, but it was not shown that Hughes ever received them or that they were read to him. It is contended that his receipt of them is to be inferred from the fact they were found among his effects in his room after his death. The proof discloses that the mail addressed to Hughes was received by Mrs. Cornish, and that at least part of the time she would not get the mail from the place it was delivered by

the carrier until she was leaving Hughes for the day, when she would get the mail and take it away with her. We are of opinion the letters should not have been admitted in evidence. The letters purporting to have been written by Hughes consist in large part of description of his helpless physical condition, his unfriendliness toward the nephew and niece to whom he gave nothing, and his friendship for and appreciation of Mrs. Cornish and his purpose to provide for her. Under all the circumstances the letters should not have been admitted.

The judgment of the Appellate Court and the decree of the circuit court are reversed and the cause remanded to the circuit court.

*Reversed and remanded.*