Julius Auerbach et al., Plaintiffs, and Lucile Goldman, Appellant, v. Continental Illinois National Bank and Trust Company of Chicago, Executor of Last Will and Testament of Carrie Reiss, Deceased et al., Appellees.

Gen. No. 44,868.

Opinion filed March 8, 1950. Released for publication April 3, 1950.

JAMES D. MURPHY, of Chicago, for appellant; JAMES S. GRISHAM and ALBIN DOMMERMUTH, both of Chicago, of counsel.

WINSTON, STRAWN, SHAW & BLACK, of Chicago, for appellees; JOHN D. BLACK and DOUGLAS C. MOIR, both of Chicago, of counsel.

Mr. Presiding Justice Lewe delivered the opinion of the court.

Lucile Goldman and Ruth Auerbach, nieces and only heirs-at-law of Carrie Reiss, deceased, filed a complaint to set aside her will and codicil thereto, alleging as grounds the lack of mental capacity and undue influence. During the pendency of this suit Ruth Auerbach died and her husband was substituted as party plaintiff. The cause was referred to a master in chancery and in conformity with his findings that the instrument and codicil here in controversy were the last will and testament of Carrie Reiss, deceased, the chancellor dismissed the complaint as amended for want of equity.

Defendants made a motion to dismiss the appeal on the ground that the trial court record is not properly authenticated in compliance with Rule 1 (4) of this court. This motion was taken with the case. The record discloses that the parties stipulated that the original master's report may be incorporated in the record on the appeal and that plaintiffs elected not to include any report of proceedings certified by the trial court. Plaintiffs did include the original master's report, the transcript of the evidence, and exhibits in the record in this appeal. Under these circumstances it is unnecessary to have a report of proceedings at the trial certified by the trial judge. See *Strickland v. Washington Bldg. Corp.*, 287 Ill. App. 340, and *Amberg v. Meeker*, 290 Ill. App. 147. The motion is therefore denied.

The evidence shows that Carrie Reiss had two brothers, William Reiss and Henry D. Reiss, and a sister, Fannie Reiss. William Reiss died in 1930, leaving him surviving two children, Lucile Goldman and Ruth Auerbach, who instituted the present suit. Carrie Reiss, her brother Henry and sister Fannie never married. They all resided together in an apartment at

premises known as 5461 Everett avenue in the City of Chicago. Fannie Reiss died April 16, 1938; Henry D. Reiss died August 13, 1944; and Carrie Reiss died October 1, 1945.

In 1927, Henry Reiss, who attended to the business affairs of the family, had one Ezra Cohn, an attorney, draft wills for himself and his sisters. These wills were drawn from notes which Henry had prepared and were executed in the presence of Cohn and his office associates who acted as attesting witnesses. In July 1931, Henry Reiss called on Attorney L. Julian Harris, a member of the firm of D'Ancona, Pflaum, Wyatt, Marwick & Riskind. Henry Reiss had copies of the wills drawn by Cohn and stated that he and his sisters wanted the old wills redrafted in substantially the same pattern as the former wills drawn by Cohn. At that time Henry Reiss informed Harris that his brother William had died and that the Foreman Bank, named as successor trustee in the former wills, had ceased doing business. On July 29, 1931, Carrie Reiss, Henry Reiss and Fannie Reiss each executed a will prepared by Harris. The will of Fannie Reiss left her estate to Carrie Reiss and Henry D. Reiss in equal shares, or all to the survivor, and, in the event that they both predeceased her, to charitable organizations. Henry D. Reiss was appointed executor and the Continental Bank as successor. The will of Henry D. Reiss left his estate to Carrie Reiss and Fannie Reiss in equal shares or to the survivor and, in the event that both sisters predeceased him, to charitable institutions; Fannie Reiss was appointed executrix and the Continental Bank successor. In the will of Carrie Reiss, which is here involved, the testatrix bequeathed the sum of $100 to her sister Fannie and the remainder to her brother Henry, and provided that in the event Henry predeceased her the remainder of her estate was to go to Fannie Reiss; and in the event both pre-

deceased the testatrix the remainder of her estate was bequeathed to seven charitable institutions. In each of the wills executed on July 29, 1931 by Carrie Reiss, her sister Fannie and her brother Henry they bequeathed to the Jewish Charities of Chicago ninety per cent of their respective estates and the remaining ten per cent was divided in the same proportion among six charitable institutions. June 2, 1945, Carrie Reiss executed the codicil here in question which made provision for the perpetual care of the family burial plot and the erection of headstones. In all other respects the codicil ratifies and confirms her last will and testament of July 29, 1931. The principal issues of fact presented for determination are whether Carrie Reiss lacked testamentary capacity and whether the will and codicil are the result of undue influence.

Ten witnesses testified for plaintiffs and seventeen testified in behalf of the defendants.

Dr. Victor S. Frankenstein, a physician called in behalf of plaintiffs, testified that in 1910 he treated Carrie Reiss for an acute heart ailment and a large fibroid tumor of the uterus; that in 1929 he was again employed as a physician in the Reiss family and made frequent visits at their home during that year, 1930, and 1931; that he made examinations of Carrie Reiss and watched her conduct in the home, and that from his observations and his examinations he was of the opinion that in July 1931, she was mentally incompetent. Dr. Frankenstein further testified that for several months prior to the death of Henry Reiss on August 13, 1944 and for one month thereafter he visited the Reiss apartment where he examined Carrie Reiss, and that her senility in 1944 "was much more advanced over what it was in 1931."

Simon Goldsmith, uncle of plaintiff Lucile Goldman, testified that he had known Carrie Reiss for many years; that in 1931 he saw the family once or twice

a month; that she never talked about her business affairs, but he was of the opinion that on July 29, 1931 she was not mentally normal and did not have a sound memory. Beatrice Greenberg, a practical nurse who lived in the same building which the Reiss family occupied from 1924 until early 1940, testified that she was a friend of Fannie Reiss and frequently visited at the Reiss home where she saw Carrie nearly every day and that she was of the opinion that Carrie Reiss was mentally incompetent. Sophia Stein, a tenant from 1924 until 1937 in the building where the Reisses lived, testified that Carrie Reiss came to her apartment frequently; that in 1931 she saw her nearly every day. This witness was of the opinion that Carrie Reiss was mentally incompetent in 1931. Louis Exstein, Hattie Exstein and Mariette Exstein stated that they occupied an apartment directly above the Reisses from 1936 until Carrie Reiss died; that they saw her often during this period, and that each of them was of the opinion that at the time of the execution of the codicil here in question Carrie Reiss was incompetent mentally.

Ezra Cohn testified that in April 1927, Henry Reiss brought to him written memoranda for the purpose of drawing three wills, one for Carrie, another for her sister Fannie, and one for himself; that Henry Reiss instructed him to prepare the wills according to the notes which were in Henry's handwriting. Cohn further testified that during the preparation of the wills he noted that the provision with respect to executorship and successor executorship vested that power in Fannie Reiss and Henry Reiss, but that no such provision was contained in the wills vesting such power in Carrie Reiss, and that he called this to the attention of Henry Reiss; that Henry Reiss told the witness that Carrie Reiss was not capable of acting as executrix, as she had the mind of a child, and that Henry Reiss did not want to place any responsibility

69

upon her, as he had taken care of Carrie's affairs. On cross-examination Cohn admitted that notwithstanding the recitals in the attestation clauses in the will relating to the mental capacity of Carrie he had his doubts as to whether Carrie Reiss was of sound mind when he and his office associates signed her will as attesting witnesses.

Attorney L. Julian Harris, called by the defendants, testified that in the latter part of June 1931, Henry Reiss came to his office with copies of the wills prepared by Cohn and asked him to draw new wills following the pattern of the old wills; that on July 29, 1931, Henry Reiss, accompanied by Carrie and her sister, went to the office of D'Ancona, Pflaum, Wyatt, Marwick & Riskind; that the witness took them to the office of Mr. Pflaum and there in the presence of another member of the firm, Harry N. Wyatt, Pflaum explained the contents of the wills to Carrie, her sister Fannie, and her brother Henry. This witness testified that he was of the opinion that Carrie Reiss was of sound and disposing memory when she executed her will on July 29, 1931. Attorneys Pflaum and Wyatt, corroborated the testimony of Harris, and also stated that in their opinion the testatrix had the mental capacity to execute her will.

Ora Heisler, an employee of a store operated by the National Tea Company, testified that from 1941 until the early part of 1945, Carrie Reiss frequently came to the store accompanied by her brother Henry to purchase groceries; that shortly after Henry's death she came to the store alone; and that afterward she was accompanied by a nurse; that Carrie Reiss selected and purchased the groceries and paid for them; that she counted the money for her purchases and furnished the rationing points for butter.. Victor Nyman, janitor of the building where the Reisses lived, Agda Nyman his wife, and Linnea Nyman his daughter testified that

they occupied an apartment near the Reisses from 1930 until Carrie Reiss died; that they each saw Carrie Reiss almost every day; and that they frequently visited the Reisses at their apartment and had many conversations with Carrie Reiss. These witnesses testified that in their opinion Carrie Reiss was mentally competent.

Pauline Orcutt, a nurse, testified that she was employed by Carrie Reiss and Henry her brother late in 1944 and remained with them until they both died; that she was in "constant contact" with Carrie Reiss; that Carrie Reiss was old-fashioned in her dress but always tidy; that she read the daily newspapers and discussed current events; that she listened to the radio; that she understood the value of money and counted her change; that Carrie Reiss was perfectly able to take care of her own affairs; and that in the opinion of the witness Carrie Reiss was of sound mind. Lee J. Furth, a funeral director who had known the Reisses twenty-seven or twenty-eight years, testified that at the time Henry Reiss died Carrie made arrangements for his funeral and suggested the name of the rabbi who was to deliver the funeral oration; and that in his opinion Carrie Reiss was mentally competent.

Maurice A. Riskind, of the firm of D'Ancona, Pflaum, Wyatt, Marwick & Riskind, testified that he represented the executor of the estate of Henry Reiss, deceased; that shortly after the death of Henry Reiss he went to the apartment of Carrie Reiss accompanied by Richard P. Fredo an assistant to the judge of the probate court for the purpose of establishing the heirs of Henry D. Reiss; that afterward at the suggestion of Carrie Reiss he prepared a codicil to her last will and testament; that Fred C. Urlacher of the Continental Bank, Lewis L. Levin, and Julius C. Jaffe, lawyers associated with the firm of D'Ancona, Pflaum, Wyatt, Marwick & Riskind, went to the apartment of Carrie

Reiss where they witnessed the execution of the codicil here in question. Riskind, Levin and Jaffe all testified that they believed the testatrix to be of sound mind and memory.

Fred C. Urlacher, assistant secretary of the Continental Bank, testified that on several occasions he discussed with Carrie Reiss the management of an agency account which she had with the bank, matters relating to certain investments and the perpetual care of the cemetery lot and the erection of headstones. This witness stated that Carrie Reiss "seemed to understand the things I explained to her during those business transactions," and that in the opinion of the witness Carrie Reiss was competent. Carlyle E. Wakefield, trust officer of the Continental Bank, testified that he met Carrie and Henry Reiss at their home in the latter part of July 1944 for the purpose of obtaining their instructions to open agency accounts to handle securities for them; that he saw Carrie Reiss at her apartment again on August 22, 1944 when he had a conversation with her about taking care of her bills so that she would not have to do it herself. This witness was of the opinion that Carrie Reiss was of sound mind.

Richard P. Fredo, assistant to the judge of the probate court, testified that on August 21, 1944, he went to the home of Carrie Reiss for the purpose of taking proof of heirship in the estate of her brother Henry and that in his opinion Carrie Reiss was of sound mind and memory. Other witnesses testifying in behalf of defendants were Anthony Pappas, a cab driver who on several occasions drove Carrie Reiss from her home to a synagogue, and Ralph Simon, a rabbi who officiated at the funeral of Henry Reiss. Rabbi Simon testified that he obtained biographical material from Carrie Reiss sufficient to enable him to deliver a eulogy for Henry.

Plaintiffs contend that the attesting witnesses who were members of a law firm representing

72

the bank as executor in the probate court are incompetent to testify. The evidence shows that D'Ancona, Pflaum, Wyatt, Marwick & Riskind acted as attorneys for the executor of the estate of Carrie Reiss in the probate court. After the present suit was instituted a member of the firm, Mr. A. J. Pflaum, told the vice-president of the bank that there were at least six persons in his firm who might be called as witnesses in this case and therefore he "did not deem it proper that we should represent the Bank in the lawsuit." At the suggestion of Pflaum the bank employed John D. Black of the firm of Winston, Strawn & Shaw. After Black was employed by the bank he conferred with Pflaum and other members of that firm. The will here in question contains no provision for the employment of D'Ancona, Pflaum, Wyatt, Marwick & Riskind, nor does the record show that any member of the firm appeared as counsel for any of the parties in this suit. Plaintiffs say that the interest of the members of the firm is manifest for the reason that if the will is not established the bank as executor and its attorneys will be replaced by the public administrator, which will result in the loss of substantial fees to be allowed the firm in the probate proceedings. This precise question was presented and the same arguments advanced as here in *Britt v. Darnell*, 315 Ill. 385. There the court held that an attorney acting for the executor in probate proceedings is competent to testify in the subsequent will contest. At page 392 the court said: "The interest which will render a witness incompetent must be such an interest in the judgment or decree that pecuniary gain or loss will come directly as the immediate result of the judgment or decree." To the same effect see *Scott v. O'Connor-Couch*, 271 Ill. 395. It is not improper for an attorney who draws a will to attest it as a witness. (*McKaig v. Appleton*, 289 Ill. 301; *Taylor v. Pegram*, 151 Ill. 106.) In our view the enactment of sections 490 and 491 of chapter 3 of the Probate Act, 1939, relating to the com-

pensation of executors and their attorneys does not alter the rule announced in the *Britt* case or render incompetent the testimony of the attesting witnesses in the instant case.

Plaintiffs maintain that the testimony of defendants' witnesses Fred Urlacher and Carlyle Wakefield, assistant secretary and trust officer respectively of the Continental Bank, is incompetent under section 2, chapter 51 of the Evidence Act. Urlacher was called by plaintiff as an adverse witness under section 60. He testified to certain transactions with the testatrix, relating to her financial and business affairs, the erection of headstones on the family burial plot, the purchase of perpetual care, and the preparation of a codicil.

On direct examination defendants' counsel interrogated the witness about matters he testified to as an adverse witness, and concluded with a question relating to the testamentary capacity of Carrie Reiss. Thereupon plaintiffs' counsel proceeded to cross-examine the witness at great length. On direct examination defendants' witness Wakefield testified that, among other things, in his opinion the testatrix was of sound mind. This witness was also cross-examined by plaintiffs' counsel. No objection was made at the time Urlacher and Wakefield testified on direct or cross-examination. After all proofs were closed plaintiffs filed a written motion to strike their testimony, which was denied.

The rule has been repeatedly announced that no objection to the competency of a witness should be made after he has been cross-examined with knowledge of his incompetency. (*People v. Sawhill,* 299 Ill. 393; *Bartlow v. Chicago, B. & Q. R. Co.,* 243 Ill. 332; *Poehlmann v. Kertz,* 204 Ill. 418.) Plaintiffs' counsel in support of their position cite *Lyman v. Kaul,* 275 Ill. 11; *Jones v. Abbott,* 235 Ill. 220; *Garrus v. Davis,* 234 Ill. 326 and *Kelsey v. Snyder,* 118 Ill. 544. From a reading of the cases last cited it appears that objec-

tions therein were raised in apt time. While the question is not free from doubt we think that plaintiffs waived the right to object to the testimony of the witnesses Urlacher and Wakefield by waiting until all the proofs were closed. Moreover, it will be assumed that incompetent evidence was rejected and only competent evidence was considered. (*Geiger v. Merle,* 360 Ill. 497.)

There is evidence tending to show that the relationship between Carrie Reiss and the plaintiffs was not friendly or cordial as plaintiffs assert. On a number of occasions Carrie Reiss expressed her aversion to the Goldmans and the Auerbachs. Lucile Goldman testified that she had not visited the Reisses for a period of seventeen years. Lawrence Goldman, plaintiff's husband, had borrowed $1,000 from Henry Reiss and it was never repaid. It is significant that Carrie Reiss made no reference to the children of William Reiss in the will drawn by Cohn in 1927 and the subsequent will drawn by Harris in 1931. The similarity of these wills shows that Carrie Reiss had a constant and enduring scheme for the disposition of her property. See *O'Day v. Crabb,* 269 Ill. 123.

Further, it would seem that the allegation in the complaint that Henry Reiss exercised undue influence is refuted by the fact that the codicil which reaffirms substantially all the provisions of her last will and testament was executed by Carrie Reiss ten months after the death of her brother Henry.

 The burden is on the contestants to prove by a preponderance of the evidence that the testatrix did not have sufficient mental capacity to make a valid will and codicil at the time she executed the instruments here in controversy. (*Williams v. Ragland,* 307 Ill. 386.) Neither the unreasonableness of a will nor the unequal disposition of the testator's property is of itself proof of a want of testamentary capacity. (*Lang-*

*wisch v. Langwisch,* 361 Ill. 632.) Neither old age nor feeble health, nor both, though combined with defective memory, will constitute lack of testamentary capacity. (*Challiner v. Smith,* 396 Ill. 106.) To have sufficient capacity to make a will the testator is only required to have capacity to know who are the natural objects of his bounty and to be able to remember them, and it is not necessary that he actually know them. (*Down v. Comstock,* 318 Ill. 445.) We think the evidence strongly tends to show that Carrie Reiss formed a plan for the disposition of her property as early as 1927 and that afterward there was no substantial deviation from her fixed purpose to bequeath her property to the charities named in her last will and testament in the event her sister Fannie and her brother Henry predeceased her.

For the reasons given, the decree is affirmed.

*Decree affirmed.*

BURKE and KILEY, JJ., concur.