WILLIAM C. PAYNE, Plaintiff-Appellant, *v.* MURPHY HARDWARE COMPANY, INC., Defendant-Appellee.

Second District No. 77-176

Opinion filed August 2, 1978.

804

Dowling & Safanda, of St. Charles, for appellant.

Robert S. Soderstrom and James P. DeNardo, both of McKenna, Storer, Rowe, White & Farrug, of Chicago, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

On June 2, 1974, plaintiff, William C. Payne, rented a rototiller from defendant, Murphy Hardware Co., Inc., for the purpose of tilling a plot of ground upon which he intended to plant a garden. During the course of the rototilling operation plaintiff fell and injured his back. A jury trial was conducted but at the close of all the evidence the trial court directed a verdict in favor of defendant on the theory that plaintiff was contributorily negligent. Plaintiff appeals, claiming that the trial court erred in the following ways: (1) directing a verdict in favor of defendant; (2) allowing defendant to amend the answer after the close of the evidence; (3) denying plaintiff's motion to strike an affirmative defense; (4) denying plaintiff leave to amend his complaint after the close of the evidence; and (5) allowing testimony by an alleged expert witness.

■■ We first consider the argument that the trial court should not have allowed one Arnett Munsterman to testify as an expert witness. Essentially, plaintiff's objections to Munsterman's testimony are, first, that he had insufficient qualifications to testify as a rototiller expert in this case, and second, that plaintiff was denied his right to preliminary cross-examination before the witness was allowed to testify as an expert. In his reply brief plaintiff also argues that, in addition to testifying as a rototiller expert, Munsterman purported to testify as an expert in physics and gravity and that this examination should not have been allowed. This contention comes too late and is deemed waived because of plaintiff's failure to raise it at the appropriate time. (Supreme Court Rule 341 (e)(7), 341(g) (Ill. Rev. Stat. 1977, ch. 110A, pars. 341(e)(7), 341(g)); *Molnar v. City of Aurora* (1976), 38 Ill. App. 3d 580, 348 N.E.2d 262.) With regard to plaintiff's arguments properly before us on this issue, defendant takes the position that Munsterman was properly qualified as a rototiller expert, that plaintiff failed to request any preliminary cross-examination, and that even if plaintiff were improperly denied such examination, it was harmless error.

We have examined *People v. Sawhill* (1921), 299 Ill. 393, 132 N.E. 477, and *Auerbach v. Continental Illinois National Bank & Trust Co.* (1950), 340 Ill. App. 64, 91 N.E.2d 144, upon which plaintiff relies for his asserted right to preliminary cross-examination. We are extremely doubtful whether these cases do, in fact, establish any such right although they definitely require that objections to the competency of a witness be raised at the earliest practicable time. It is apparent to us that allowing preliminary cross-examination going to the qualifications of an alleged expert witness is oftentimes a salutory practice which will expedite trials and further the objective of affording everyone a fair trial. This fact, however, does not necessarily establish it as a right in all cases.

■■■ Assuming for the moment that plaintiff did have a right to cross-examine Munsterman concerning his qualifications as a rototiller expert, we agree with defendant that plaintiff never asserted this alleged right. Although plaintiff objected to Munsterman's qualifications he never at any time requested cross-examination of this witness prior to the end of the witness' direct testimony. Thus, we believe that plaintiff waived his alleged right to preliminary cross-examination. We are further of the opinion that Munsterman was qualified to testify as a rototiller expert. He had the equivalent of two years of college in the field of engineering and extensive experience with belt-driven machines. Specifically with regard to rototillers, he had been in the business of renting them for 11 years and had also operated them personally for approximately the same period of time. As plaintiff points out, Munsterman did not purport to testify as a mechanical engineer with regard to rototillers but there is no

requirement that all testimony concerning machinery must come from mechanical engineers. Plaintiff also asserts that witness Munsterman had insufficient experience with the particular rototiller involved in this case. The testimony reveals that Munsterman did not normally rent or operate rototillers of the particular brand involved herein. He testified, however, that he had examined this particular machine prior to trial and was familiar with the way it operated. There is nothing whatsoever in the testimony to indicate that the operation of this particular rototiller was so different from that with which he had experience as to render his testimony incompetent. (See *Peterson v. Lou Bachrodt Chevrolet Co.* (1978), 61 Ill. App. 3d 898.) We believe that the trial court properly concluded that Munsterman had special knowledge in the field of rototillers and that his opinions would assist the jury in reaching a verdict. Plaintiff's cross-examination revealed nothing which would disqualify witness Munsterman from testifying as an expert and, therefore, any denial of the alleged right to preliminary cross-examination was harmless error.

We turn now to plaintiff's contention that under *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, the trial court erred in directing a verdict in favor of defendant at the close of all the evidence. It is to be noted that this case was tried upon the theory that defendant negligently rented the rototiller in question to plaintiff with an enlarged belt. Plaintiff takes the position that this belt came off of one of the pulleys during the rototilling operation, causing the machine and the plaintiff to fall, thus causing plaintiff's injuries. Preliminarily, we note that the record presented to us contains no medical evidence whatsoever that this fall was the cause of plaintiff's back injuries. Inasmuch as the parties, however, have not made an issue of this, we decline to discuss it further. Instead, we will focus our attention upon the question of whether plaintiff proved that this belt came off thereby causing his injury, and we will set forth only the testimony relevant to that issue.

Both plaintiff and his wife testified that plaintiff had been rototilling for approximately 10 to 15 minutes in the garden plot before this incident happened. He had rototilled the entire plot one time to a depth of approximately 12 inches. Immediately before this incident, the rototiller dug down into the ground, causing a hole estimated to be 18 inches deep, or 6 inches deeper than the other tilled ground. In order to extricate the machine from this hole, plaintiff testified that he pushed down on the handles of the rototiller and the machine started to crawl out of the hole. The machine was apparently almost out of this hole at the time when both plaintiff and the machine fell both backwards and sideways. Plaintiff testified that the machine started falling backward at him, he attempted to avoid having it fall upon him, and then both he and the machine fell.

His wife testified that both plaintiff and the machine fell together. After the fall, the engine on the machine was still running but both plaintiff and his wife testified that the tines were not moving at that time. The machine was turned off and thereafter dragged either to a grassy area beside the proposed garden plot or back onto plaintiff's truck for the purpose of returning it. After moving the rototiller, plaintiff and his wife examined it and they both noticed that the belt had come off of one of the pulleys. When plaintiff and his wife returned the rototiller they reported having "trouble" with it, but no report of the claimed injury was made to defendant until approximately two weeks later. According to Munsterman, the expert who testified on behalf of defendant when a belt comes off of a rototiller the tines stop.

■■ It can thus be seen that from the testimony received in this case the belt was definitely off after the machine had been moved an undetermined distance by plaintiff and his wife. Considering the testimony of Munsterman, as well as that of plaintiff and his wife that the tines were stopped before the machine was moved, we believe the jury and the court could properly draw an inference that the belt had come off of the pulley before the machine was moved by plaintiff and his wife. That, however, is not sufficient. Plaintiff had the burden of proving that the belt came off the machine *before* the fall. This record contains no such evidence. While it is possible that it might have come off before the fall, it is equally possible that it came off during the fall or immediately after the machine hit the ground. A defendant's liability cannot be predicated upon surmise or conjecture as to the cause of the injury. Proximate cause is only established when there is a reasonable certainty that defendant's acts caused the injury. (*Murphy v. Messerschmidt* (1976), 41 Ill. App. 3d 659, 355 N.E.2d 78; *Potter v. Edgar* (1975), 34 Ill. App. 3d 33, 339 N.E.2d 321.) There was no evidence offered that the rototiller fell because the belt came off the pulley, nor was there any evidence that the rototiller came in contact with or actually caused the plaintiff to fall or was the proximate cause of plaintiff falling. Inasmuch as plaintiff failed to establish the necessary element of proximate causation, the trial court was correct in directing a verdict for defendant.

Because of our decision that the directed verdict for defendant was proper, we find it unnecessary to discuss the issues dealing with the propriety of denying plaintiff's motion to strike the original affirmative defense and allowing defendant to add a second affirmative defense after the close of the proofs. The trial court's action is not being sustained on the basis of either affirmative defense and we will not discuss these matters further. It is necessary, however, to discuss the final issue of whether the trial court properly denied plaintiff leave to amend his complaint after the close of the evidence.

The defendant takes the position that plaintiff's motion to amend was not made until after the trial court had directed the verdict for defendant. This portion of the record discloses the sequence of events was as follows. The trial court finished taking evidence from both parties late on the afternoon of December 7, 1976. Following the dismissal of the jury for that day, the trial court heard arguments from counsel concerning defendant's motion for a directed verdict and advised them that he would render a decision the following morning. There was further argument on the morning of December 8 concerning the merits of the motion for a directed verdict after which the trial court stated that it would enter a directed verdict for the defendant. Plaintiff's counsel attempted to persuade the trial court to allow the case to go to the jury. Thereafter, various other matters were considered, including the defense motion to amend its answer, which we have found unnecessary to discuss, and plaintiff's motions to amend his complaint in three regards, only one of which is pursued on this appeal. After the trial court had ruled on the various motions, the jury was called in, informed that the court had directed a verdict in favor of the defendant, and dismissed. Later, on the afternoon of December 8, a signed order directing a verdict in favor of the defendant was filed with the clerk of the court. Essentially, therefore, what we have is a situation in which the plaintiff's motion was made after the trial court indicated its intention to direct a verdict for defendant but before the court actually took any action upon that stated intention. We find no authority that the mere stated intention of the trial court is a sufficient final judgment. Therefore, in deciding the propriety of the trial court's action upon plaintiff's motion to amend, we will apply section 46(1) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 46(1)), dealing generally with amendments before final judgment, instead of section 46(3) (Ill. Rev. Stat. 1975, ch. 110, par. 46(3)), which applies only to amendments to conform the pleadings to the proof, as urged by defendant. In this area it is well established that the trial court has broad discretion in ruling on motions to amend pleadings prior to the entry of final judgment and the denial of a motion to amend will not be regarded as prejudicial error unless there is a manifest abuse of the trial court's discretion, *Mundt v. Ragnar Benson, Inc.* (1975), 61 Ill. 2d 151, 335 N.E.2d 10.

Plaintiff proposed to amend his complaint by adding an allegation that defendant "failed to give the plaintiff adequate instructions in the use of the rototiller." Plaintiff's original complaint included an allegation that defendant "failed to warn the plaintiff of the dangers involved in the operation of said rototiller machine at the time said machine was leased to the plaintiff." The court specifically stated that it was denying plaintiff's motion to amend because it was not timely and should have been made at

the end of plaintiff's own proofs. We tend to agree with the trial court that plaintiff was definitely dilatory in his amendment. It is apparent to us that plaintiff must have known at all times the extent of the instructions given to him when he rented this rototiller. He included an allegation in the complaint to the effect that defendant had failed to warn him of the dangers involved. Plaintiff's own testimony with regard to the instructions given is sketchy. He indicated that certain things were done, thereby perhaps creating the inference that other things were not done. But, the testimony never really states any particular deficiencies in the instructions except with regard to the dragbar. On that particular subject plaintiff testified defendant never told him how to set the dragbar to till to a particular depth and he just set it at one point and began his rototilling, yet nothing herein related deficiencies in the dragbar usage to the injury. Plaintiff's apparent claim regarding the failure to properly instruct, so far as we can tell, is based upon a discrepancy between plaintiff's recitation of what was done and the recitation by defendant's expert of what was customarily done in the rototiller business when renting a machine to a customer. Even this alleged discrepancy, however, seems to go only to the matter of whether the clutch was engaged and the belt, which plaintiff alleged was defective, was in fact tested during the process of renting the rototiller to plaintiff. This goes only to the issue of alleged deficiencies in the belt, which was already pleaded. We do not know in what particulars plaintiff contends he was inadequately instructed or how they might relate to his injury. Therefore, it is apparent to us there was no real evidence in the record to support plaintiff's proposed amendment. It appears to us that what really happened here was that during the argument on December 7 the trial court indicated some concern about the extent of instruction given plaintiff, and counsel thereafter sought to capitalize on this idea, even though he had previously tried his case on a different theory.

■■ In view of these facts, and the definite similarity between the already existing allegations of the complaint and the proposed amendment, we find no abuse of discretion by the trial court in denying the plaintiff leave to amend his complaint. See *Able v. Pure Oil Co.* (1972), 8 Ill. App. 3d 558, 290 N.E.2d 331.

The judgment of the trial court is affirmed.

Affirmed.

WOODWARD and BOYLE, JJ., concur.