PETER COKINIS et al., Plaintiffs-Appellants, v. MAYWOOD-PROVISO STATE BANK et al., Defendants-Appellees.

First District (1st Division)   No. 78-1555

Opinion filed February 11, 1980.

Michael H. Postilion, Ltd., of Chicago, for appellants.

Michael B. Mann, of Maywood, for appellees.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Peter Cokinis and Isabelle Cokinis, his wife, plaintiffs, brought this action against Maywood-Proviso State Bank (the bank) and Peter D. Giachini, John Murphy and Michael Cooper, doing business as Giachini & Murphy, defendants, for alleged fraudulent and willful and wanton conduct with respect to a sheriff's sale of plaintiffs' property. The court directed a verdict for defendants on the allegations of fraud and willful and wanton conduct, but submitted plaintiffs' claim to the jury as a claim against Cooper and the bank for negligence. The jury returned a verdict for plaintiffs against Cooper and the bank in the amount of $50,000, but the court entered a judgment *n.o.v.* for defendants and entered judgment

against those defendants for $2250. Plaintiffs' motion for post-trial relief was denied. Plaintiffs appeal.

Peter Cokinis testified that the bank made a series of loans to him which he used in financing his wholesale and retail meat business. The bank originally loaned Cokinis $5250 on April 13, 1965. He borrowed $11,800 on May 4, 1965, to refinance the first loan. Cokinis did not give the bank any collateral for either loan. On August 25, 1965, the bank loaned $17,625 to both Peter and Isabelle Cokinis to refinance the May 4 loan. The Cokinises, on August 25, also signed a separate document assigning as collateral for this loan their joint beneficial interest in their residence, which they earlier had placed in a land trust with the bank as trustee.

Plaintiffs repaid most of the August 25, 1965, loan and the bank refinanced the remainder by loaning them $10,900.53 on July 24, 1967. The plaintiffs both signed a promissory note to the bank. The note stated they pledged as collateral their beneficial interest in their residence. This note was paid off by plaintiffs without further refinancing on December 16, 1967.

The bank loaned $1500 to Peter Cokinis on June 11, 1970, and refinanced this loan on September 18, 1970, with a loan to him of $1605. For each of these two loans, Peter Cokinis alone signed the promissory notes, stating he pledged as collateral the beneficial interest in the Cokinises' residence.

Peter Cokinis failed to make the payments on the September 18 loan. The bank sent him a letter on December 5, 1970, stating that he should bring his account current by December 12, or a judgment would be obtained against him. The bank then turned the matter over to defendant Michael Cooper, a partner in the law firm of Giachini & Murphy. Cooper wrote to Mr. Cokinis on December 15, 1970, asking him to bring his account current within five days. Cokinis failed to pay the obligation, and on December 23, 1970, Cooper obtained a confession of judgment in favor of the bank against Cokinis for $1714.73.

Cooper wrote to Cokinis on December 28, 1970, informing him that a judgment had been confessed against him for $1714.73 and that unless payment was made within 10 days, Cooper was authorized to commence foreclosure proceedings against the Cokinises' home. Cokinis failed to pay the judgment. On April 15, 1971, Cooper sent him notice that on April 23, 1971, Cooper would ask the court for an order directing the sheriff to sell the beneficial interest in the Cokinises' home at public auction. Cokinis did not pay the judgment and Cooper appeared before the court on April 23, 1971. The Cokinises were not present at this hearing. Cooper advised the court of the bank's judgment against Peter Cokinis and informed the court that the beneficial interest in the Cokinises' home had

been pledged as collateral for the loan. The court then entered an order, prepared by Cooper, stating that Peter and Isabelle Cokinis jointly owned the beneficial interest in their residence and that they both had assigned their beneficial interest as security for the September 18 loan upon which judgment had been confessed. The order also directed that the sheriff sell the beneficial interest and that the proceeds be applied toward satisfying the bank's judgment against Peter Cokinis. Cooper mailed a copy of this order to Cokinis on April 28, 1971.

The sheriff's sale was set for June 21, 1971. Cokinis called Cooper on June 15 and asked for an appointment to discuss the situation. Cokinis came to Cooper's office on June 17 and told him he wished to arrange for an installment payment plan. Cooper agreed to this, but told Cokinis that the sheriff's sale would still take place as scheduled. Cokinis then paid $400 on the judgment and Cooper, on behalf of the bank, entered into a written agreement with Cokinis acknowledging receipt of the $400 and agreeing to an installment payment schedule for the remainder of the judgment. The agreement also stated that the entire beneficial interest in the Cokinis' home was to be sold on June 21, 1971, and that the bank would "bid its full judgment at the * * * sale and acquire the beneficial interest." Peter Cokinis testified that he had read and understood the agreement and had shown it to his wife, and had known that the sale would go forward.

The sheriff's sale occurred at 10 a.m. on June 21, 1971. Cooper had planned to bid only the amount of the bank's judgment, but made no bid because two other individuals, George Javaras and Josephine Skach, bid $1845.41 for the property. Javaras and Skach were the only bidders. Prior to the sale, the sheriff had asked Cooper if he wished to proceed and Cooper had not requested a continuance. George Javaras testified that it is customary that a sheriff's sale will be continued or cancelled at the request of a plaintiff's attorney.

Cooper testified that he had not asked his law partners, Peter Giachini and John Murphy, how the sheriff's sale would be conducted. Cooper further testified that he was inexperienced with respect to such sales. He had previously participated in only one foreclosure sale and on that occasion the bank had been the sole bidder. Cooper testified that he "just assumed that this would be the same type of transaction," and that the bid of Javaras and Skach came as a total surprise to him.

After the sale, Cooper went back to his office. According to Cooper's secretary at that time, he appeared very nervous. Cooper testified that when he returned to his office he called Peter Cokinis and informed him about the sale, and Cokinis told him he would be hearing from his lawyer. Cooper stated that later that day he received a phone call from Fred Ginsberg, Cokinis' lawyer. Cooper testified that Ginsberg told him he was

going to file a petition to vacate the sale, and that he felt Cokinis should pay the remainder of the judgment and asked for Cooper's cooperation. Cooper then prepared a release of judgment, dated June 21, 1971, and Peter Giachini signed it on behalf of the bank.

Cooper testified that on June 21 he also sent a notice of motion to Ginsberg and to Javaras and Skach, stating that he would appear in court on June 24 and ask the court to set aside the sale. Cooper's secretary at that time testified that she prepared and mailed this notice on June 21. A copy of the notice was introduced as an exhibit. In addition, Cooper that day told his partner, John Murphy, about the sheriff's sale and Murphy arranged for the bank to refuse to accept the assignment of the beneficial interest from the sheriff to Javaras and Skach.

Peter Cokinis came to see Cooper on June 22 and paid the balance of the judgment and signed a note promising to pay the bank $138.68 for judgment interest and costs. Cokinis testified that Cooper never called him on June 21 or told him on June 22 that a third party had been the successful bidder at the sale. Cokinis stated that he first learned Javaras and Skach had been the purchasers when Javaras came to his home and told him this on the evening of June 22. Also, Fred Ginsberg testified that he did not speak to Cooper or anyone at the bank on or before June 21.

Peter Giachini and John Murphy testified that they were not involved in the sale of the Cokinis property. Giachini stated that he was surprised when Cooper told him about being outbid. He further testified that he did not know whether Isabelle Cokinis had signed for any loans after that of August 25, 1965. He also stated that before the sale he did not see the June 17, 1971, agreement which Cooper on the bank's behalf had entered with Peter Cokinis.

After the bank refused to accept the assignment of the beneficial interest to Javaras and Skach, Javaras and Skach filed a petition for a rule to show cause why the bank should not be held in contempt for failing to comply with the court's order of sale of April 23, 1971. Peter and Isabelle Cokinis then filed a petition requesting the court to declare the sale to Javaras and Skach void. The bank also filed a petition to have the sale set aside.

Following a hearing on July 26, 1971, the court entered an order stating that the sale was a judicial sale which required confirmation by the court; that the order of sale of April 23, 1971, was void as to Isabelle Cokinis because she was not a party or a judgment debtor; that the June 17, 1971, written agreement between Peter Cokinis and the bank satisfied the judgment which was the basis of the sale; that the sale price was so inadequate as to shock the conscience of the court; and that the judgment had been released and satisfied by payment. The court vacated the April 23 order of sale and voided the assignment of the beneficial interest to

Javaras and Skach. The appellate court affirmed the trial court's decision. (*Maywood-Proviso State Bank v. Cokinis* (1973), 11 Ill. App. 3d 659, 297 N.E.2d 325.) The supreme court denied Javaras and Skach leave to appeal. *Maywood-Proviso State Bank v. Cokinis* (1973), 54 Ill. 2d 592.

During the trial and appellate proceedings to have the sale set aside, the bank argued that Isabelle Cokinis' interest in the land trust had not been pledged as collateral for the September 18, 1970, loan upon which judgment had been confessed against Peter Cokinis. This was contrary to the position the bank had earlier taken when it had argued in favor of the trial court's order of sale of April 23, 1971. Cooper testified that the bank argued differently during the proceedings to void the sale in order to aid the Cokinises. Cooper further testified that when the order of sale was entered he believed that there had been a valid pledge of Isabelle Cokinis' interest as security for the September 18 loan and that this remained his opinion. Cooper stated that the refinancing of prior loans to which Isabelle Cokinis had been a party was the consideration for the pledge of her interest as collateral for the September 18 loan. Cooper also stated that he was unsure whether, at the time the order of sale was entered, he knew if these prior loans already had been fully paid before the bank made the September 18 loan.

Peter Cokinis testified that neither he nor his wife had ever requested from the bank a release of any assignments of their beneficial interest until February 1974. Fred Ginsberg testified that it is the custom and practice in the banking industry that when an obligation is paid for which a beneficial interest in a land trust has been assigned as security, it is the duty of the bank to reassign the beneficial interest to the owner. Cooper testified that he thought that Peter Cokinis had presented a letter of direction to the bank to convey the property out of the trust in March 1971 and that the bank had refused because it was the assignee of the beneficial interest and litigation concerning the unpaid loan was already pending.

After the supreme court denied Javaras and Skach leave to appeal, the Cokinises sold their home to their son. They subsequently brought this action, charging defendants with fraud and willful and wanton conduct concerning the sale to Javaras and Skach, and requested compensatory and punitive damages. At the close of all the evidence on November 8, 1977, the court directed a verdict in favor of Giachini and Murphy. The court also directed a verdict for Cooper and the bank on the allegations of fraud and willful and wanton conduct. The court precluded plaintiffs from seeking punitive damages, but submitted plaintiffs' claim to the jury as a claim against Cooper and the bank for compensatory damages based on negligence. The court instructed the jury that if it found Cooper and the bank liable for negligence, it should set damages which would compensate plaintiffs for the reasonable legal expenses they had incurred

in having the sale set aside. Fred Ginsberg had testified he had charged the Cokinises $2250 for the legal work he performed in having the sale declared void.

The jury returned a verdict in favor of plaintiffs against Cooper and the bank for $50,000. Cooper and the bank moved the court for a judgment *n.o.v.* or for a remittitur reducing their liability to $2250, or a new trial. The court entered an order on December 21, 1977, granting judgment *n.o.v.* for Cooper and the bank on the $50,000 verdict, and entering judgment in favor of the plaintiffs against Cooper and the bank for $2250. Plaintiffs moved for a new trial against all defendants on the allegations of fraud and willful and wanton conduct, and further moved that the jury's verdict for $50,000 be reinstated. The court, on June 18, 1978, entered an order denying plaintiffs' motions.

Plaintiffs contend that the evidence does not support the trial court's directed verdict for defendants on plaintiffs' allegations of fraud and willful and wanton conduct. Plaintiffs argue that defendants committed fraud or were willful and wanton (1) when Cooper sought and obtained the court's order of sale on April 23, 1971, and represented to the court that both Peter and Isabelle Cokinis had assigned their joint beneficial interest as security for the September 18 loan on which judgment was confessed; (2) when Cooper, prior to the sheriff's sale, failed to inform the court of the June 17, 1971, agreement between Peter Cokinis and the bank for payment of the judgment; (3) when Cooper failed to prevent Javaras and Skach from being the successful bidders by having the sheriff continue the sale; (4) when Cooper failed to inform Peter Cokinis that Javaras and Skach were the successful bidders when Cokinis paid Cooper the principal amount of the judgment on June 22, 1971.

■■ It is well settled that a court should direct a verdict or enter a judgment *n.o.v.* only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) Where a substantial factual dispute is presented by the evidence and where an assessment of the credibility of witnesses and an election between conflicting evidence may be decisive, it is erroneous to direct a verdict. However, if no evidence or a mere scintilla of evidence is presented tending to prove the plaintiff's allegations, the court should direct a verdict.

We think that the trial court complied with this standard in directing a verdict for defendants on plaintiffs' allegations of fraud and willful and wanton conduct.

■■ The concept of fraud implies a wrongful intent, that is, an act or concealment which is calculated to deceive and which the person

claiming fraud had relied on to his detriment. (*Exline v. Weldon* (1974), 57 Ill. 2d 105, 311 N.E.2d 102.) Willful and wanton conduct, like fraud, is not the same as negligence. Willful and wanton conduct involves an act exhibiting reckless disregard concerning the possibility of injury. The degree of culpability is greater under a charge of willful and wanton conduct than under negligence. (*Quad County Distributing Co. v. Burroughs Corp.* (1979), 68 Ill. App. 3d 163, 385 N.E.2d 1108; 28 Ill. L. & Prac. *Negligence* §5 (1957).) Also, punitive damages are allowed only when a wrongful act is accompanied by aggravated circumstances, including fraud, willfulness, wantonness, malice, violence and oppression. *Quad County*; 15 Ill. L. & Prac. *Damages* §132 (1968).

There was clearly no evidence introduced of any fraudulent or willful and wanton acts by Peter Giachini or John Murphy. Also, the evidence introduced concerning Michael Cooper's conduct as agent for the bank amounted to no more than a scintilla of proof of fraud or willful and wanton conduct. The evidence showed that Cooper's conduct was negligent at most, not fraudulent or willful and wanton. The evidence is overwhelming that Cooper was at most negligent in informing the court at the time the sale was ordered that both Peter and Isabelle Cokinis had assigned their joint beneficial interest as security for the loan confessed upon. The judgment which Cooper obtained for the bank against Peter Cokinis was for nonpayment of the September 18, 1970, loan. Isabelle Cokinis was joint owner of the beneficial interest in the Cokinises' home, but Peter Cokinis alone signed the note pledging the beneficial interest as security for this loan. However, this loan was one of a series of revolving loans which were used in financing Peter Cokinis' meat business. Also, Isabelle Cokinis signed the separate document assigning the beneficial interest as security for the August 25, 1965, loan, and with her husband signed the note for the July 24, 1967, loan pledging their beneficial interest as collateral for that loan. At the time of the confession of judgment suit, no formal revocation of these assignments had taken place. It is understandable, then, how Cooper could have overlooked the fact that Isabelle Cokinis had not pledged her interest as collateral for the September 18, 1970 loan. Furthermore, Cooper testified without contradiction that the bank took the position during the proceedings to set aside the sale that Isabelle Cokinis' interest had not been pledged in order to help the Cokinises, but that it had always been his view that Isabelle Cokinis' interest had been pledged as collateral for the September 18 loan. Even when this evidence is viewed most favorably to plaintiffs, Cooper's representation to the court that Isabelle Cokinis' interest had been pledged as collateral for the September 18 loan cannot be characterized as deceitful or reckless.

The evidence is also overwhelming that Cooper's failure to inform

the court prior to the sale that Peter Cokinis had entered an agreement with the bank on June 17, 1971, to pay the judgment in installments was at most negligence, not fraudulent or willful and wanton. The agreement stated that the sale would go forward; Cooper told Cokinis on June 17 that the sale would take place as scheduled, and Cokinis testified that he understood this. This evidence, even when construed most favorably to plaintiffs, as clearly showing that Cooper's failure to anticipate that reporting the June 17 agreement to the court prior to the sale could have caused the court to cancel the sale cannot be viewed as deceitful or reckless.

The evidence also leaves no doubt that Cooper's failure to prevent Javaras and Skach from successfully bidding for the property was at most negligence. Cooper was inexperienced concerning such sales and was completely surprised by Javaras and Skach's bid. Afterwards, he immediately sent notice to the Cokinis lawyer and to Javaras and Skach that he would appear in court on June 24 to have the sale set aside. Cooper then did appear in court and filed a petition to have the sale voided. Cooper's conduct in this matter cannot be considered fraudulent or willful and wanton.

Finally, Cooper's alleged failure to inform Peter Cokinis about Javaras and Skach's successful bid when Cokinis paid the balance of the judgment on June 22 was at most negligence. Even assuming the truth of this allegation and also that Cooper did not inform Cokinis' lawyer about Javaras and Skach's bid in a telephone conversation on June 21, this did not raise an issue of fraudulent or willful and wanton conduct by Cooper. Cooper and his secretary at the time of the sale both testified without contradiction that on June 21 he sent a notice of motion to Cokinis' lawyer and to Javaras and Skach that he would appear in court on June 24 and move to have the sale set aside. A copy of this notice was introduced as an exhibit. Also, Cooper did appear in court and moved that the sale be voided. This evidence leaves no doubt that Cooper's alleged failure to orally inform Cokinis or his lawyer on June 21 or 22 about Javaras and Skach's successful bid was, at most, negligence. It was not a deceitful or reckless attempt to conceal what had happened to avoid discouraging Cokinis from paying the remainder of the judgment.

■■ The trial court was clearly correct in directing a verdict in favor of defendants on plaintiffs' allegations of fraudulent and willful and wanton conduct and in precluding plaintiffs from seeking punitive damages from Cooper and the bank. We affirm that action of the trial court.

Plaintiffs also argue that the trial court should not have entered judgment *n.o.v.* for Cooper and the bank. Plaintiffs maintain that the evidence supports the jury's verdict for plaintiffs against Cooper and the bank for $50,000 based on negligence. Plaintiffs urge that Peter Cokinis'

meat business collapsed financially during the litigation to set aside the sale to Javaras and Skach, and argue that the jury inferred that the business collapsed financially because of Cooper's and the bank's negligence. Plaintiffs further argue that the fact that the trial court entered judgment for plaintiffs for $2250 after entering judgment *n.o.v.* for Cooper and the bank on the $50,000 verdict establishes that the judgment *n.o.v.* was contrary to the evidence.

Cooper and the bank contend that plaintiff's only evidence of damages was the testimony by plaintiffs' lawyer that he charged plaintiffs $2250 for his services in having the sale set aside. Cooper and the bank maintain that evidence of business losses was excluded because it was speculative and conjectural and that plaintiffs made no formal offer of proof of specific damages and did not allege business damages in their complaint. Cooper and the bank also urge that it was proper for the trial court to grant them a judgment *n.o.v.* on the $50,000 verdict and then enter judgment for plaintiffs for $2250. They argue that the jury intended to render a verdict for plaintiffs in the amount of the damages proved, that is, $2250, and that the trial court properly "amended" the verdict to conform it to the jury's intention.

■■ A party is not liable for negligence if his allegedly negligent act was not the cause of the injury complained of. The causal connection cannot be predicated on surmise or conjecture, but must be established to a reasonable certainty. (*Payne v. Murphy Hardware Co.* (1978), 62 Ill. App. 3d 803, 379 N.E.2d 817.) Furthermore, it is a general rule that damages cannot be allowed when based on mere speculation, hypothesis, conjecture or whim. *De Koven Drug Co. v. First National Bank* (1975), 27 Ill. App. 3d 798, 327 N.E.2d 378.

■■ There was no evidence that Peter Cokinis' business collapsed because of any negligence by Cooper and the bank. In fact, the record shows that Cokinis' business was experiencing serious financial difficulties prior to the sale to Javaras and Skach. It would have been purely speculative for the jury to conclude that, absent the sale to Javaras and Skach, Cokinis could have used his home as security for financing which would have prevented the collapse of his business. Furthermore, evidence of specific business damages was neither introduced nor offered. Under these circumstances, we must agree with the trial court's conclusion that the $50,000 verdict was excessive and that plaintiffs' only proven damages were the $2250 they had paid their attorney. However, it was improper for the trial court to enter a judgment *n.o.v.* for Cooper and the bank on the $50,000 verdict and then enter judgment for plaintiffs for $2250.

■■■ A trial court may correct a jury verdict which is defective or irregular in form if it is possible to determine the jury's intent by referring to

the entire proceedings. (*Martin v. McIntosh* (1976), 37 Ill. App. 3d 526, 346 N.E.2d 450.) While the jury in this case would not have been justified in speculating that Cooper's conduct caused the collapse of Cokinis' business, the jury may have so speculated when it awarded damages of $50,000. The jury's intent concerning the verdict is unclear. Therefore, the trial court's entry of judgment for plaintiffs for $2250, after entering judgment *n.o.v.* on the $50,000 verdict, cannot be justified as an amendment of the verdict to conform to the jury's intention. The trial court instead should have ordered a remittitur. Amending a verdict is not the same as entering an order for remittitur. (*Churchill v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 127, 383 N.E.2d 929.) Therefore, under the authority of Supreme Court Rule 366(a)(5) (Ill. Rev. Stat. 1977, ch. 110A, par. 366(a)(5)), we order that the judgment entered *n.o.v.* for defendants and the judgment entered for plaintiffs be reversed; that the jury's verdict for $50,000 damages be reinstated and that there be a remittitur in the amount of $47,750. If plaintiffs file a remittitur in this court on or before 30 days from the date of the receipt by plaintiffs' counsel of a certified copy of this opinion, judgment will be entered for plaintiffs in the sum of $2250; otherwise said case will be remanded to the circuit court of Cook County for a new trial on damages only.

Affirmed in part; reversed in part; remittitur ordered, otherwise reversed and remanded for new trial on damages only.

GOLDBERG, P. J., and McGLOON, J., concur.