PUBLICATION CORPORATION, Plaintiff-Appellant, *v.* THE CHICAGO RIVER AND INDIANA RAILROAD COMPANY, Defendant-Appellee.

First District (5th Division)    No. 62662

Opinion filed June 3, 1977.

Clausen, Miller, Gorman, Caffrey & Witous, of Chicago (Ronald A. Lev, of counsel), for appellant.

Edward R. Gustafson and Paul G. Velbergs, both of Chicago, for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Publication Corporation, brought action against defendant, Chicago River and Indiana Railroad Company, for damages sustained when two of defendant's cars derailed from plaintiff's railroad siding. At the close of plaintiff's case the trial court directed a verdict in favor of defendant, from which judgment plaintiff appeals. The sole issue on appeal is whether the trial court erred in directing a verdict for defendant. We affirm. The pertinent facts follow.

Plaintiff is the parent company of Alco-Gravure, Inc., a printing concern located at 2436 West 15th Street, Chicago, Illinois. The accident

occurred on an industrial railroad siding belonging to plaintiff, and serviced by defendant, located at the above address. At this point defendant's main line tracks run in a north-south direction and the connection to plaintiff's siding branches off in a northeasterly direction. After passing through a gate marking the entrance to plaintiff's property, the track curves to the east and continues for approximately 200 feet in an easterly direction, ending at a bumping post. Shortly beyond the point where the track begins to run due east are located a boiler room to the north of the track and a loading dock to the south. The main tracks are approximately 16 to 18 feet above the point of plaintiff's loading dock located on the railroad siding. Thus, the siding tracks follow a gradual descent, with a cumulative drop of 16 to 18 feet.

Two retired employees of plaintiff testified on behalf of plaintiff as to the facts and circumstances surrounding the accident on November 6, 1968.

Joseph Plotzke had been employed by Alco-Gravure for 25 years, up through April 1, 1974. His job duties concerned paper control and to see that adequate quantities of paper were on hand at the plant. This required that he make frequent appearances at the loading dock to determine the progress of paper unloading. In his regular routine he would check the condition of the dock and the adjacent railroad siding. At about 3:30 p.m. on the date of the occurrence, Plotzke observed the condition of the siding tracks from his vantage point on the dock. He observed no abnormalities in the track. Plotzke had an understanding with the dock foreman that any deficiencies observed in the track would be reported to him. The foreman walked up the length of the siding in the afternoon to place a written "switch order" in a box near the main tracks, advising defendant which cars could be pulled out as empties and replaced, and which cars should be left at the dock. On November 6, 1968, before the occurrence, no problems concerning the track were reported. The siding had been repaired approximately nine months prior and no unusual problems had occurred prior to Plotzke leaving work at 4:30 p.m. on the date of the occurrence. Plotzke stated that he did not descend to the ground to make a detailed inspection of the track. From his location on the platform he could not tell whether a spike was loose but only if it was raised. Likewise, the witness admitted that he would be unable to observe a spread in the rails unless it was at least 2½ inches.

Otto Ziegler was employed by plaintiff as a stationary engineer for 36 years, until his retirement in April of 1974. He worked six days each week on the 4 p.m. to midnight shift. He was usually stationed in the boiler room, about 8 to 10 feet below ground level; however, there are a set of windows in the boiler room through which he could observe train cars as they entered and exited on the siding. Ziegler's duties included closing the

entrance gate to the siding after railroad cars had been brought in. To do this he had to walk the length of the siding track which gave him a daily opportunity to observe the condition of the siding. Since the reconstruction of the siding in the year prior to the occurrence, Ziegler had not observed anything wrong with the track.

On the date of the occurrence, Ziegler arrived at work at 3:30 p.m. He checked the gauges in the boiler room. Empty cars had been pulled out of the siding by defendant, and full cars were being brought in. Initially, Ziegler heard the sound of defendant's train entering the siding. It created a much different noise than he was used to hearing during his 30 years of employment. Glancing through the boiler room windows, he saw the cars coming down the siding track at a speed "twice as fast as what they used to." He immediately ran upstairs and observed the derailed cars. The car furthest east had all eight wheels off the track, with the wheels located to the south of their respective rails. Another car had four wheels on the track and four wheels off.

Ziegler went into the main plant to report the occurrence and remained there for one-half hour. When he returned only the totally derailed car remained. He observed grooves about 5 inches deep in the ties on the south side of the adjacent rails and spikes had been uprooted. This condition extended eastward to the gate as far as he could see. Ziegler stated that he was acquainted with a spread rail condition, wherein the rails would be too far apart to accommodate the wheels, and he observed nothing of this nature prior to the occurrence. However, he would not be able to tell if the rails were spread one inch. The incident occurred at approximately 5:30 p.m.

■■ The rule is established that verdicts should only be directed "in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) Plaintiff contends that the evidence presented in its case-in-chief was sufficient to avoid a directed verdict under the *Pedrick* standard. We disagree.

It is axiomatic that "[a] complaint for negligence must set out: the existence of a duty owed by the defendant to the plaintiff, a breach of that duty and an injury proximately resulting from the breach." (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 374, 308 N.E.2d 617, 168.) While defendant in the instant case was under a duty to use ordinary care with respect to plaintiff's property, a review of the record reveals a lack of any evidence tending to show either a violation of that duty or proximate causation of plaintiff's damages.

■■ The only evidence of negligence or violation of a duty by

defendant presented was Ziegler's testimony that the train was entering the siding at twice its usual rate of speed. There was no testimony to establish what the usual rate of speed was, whether slow or fast, nor was there testimony indicating that the usual speed represented the maximum reasonable speed. To allow a jury to speculate that twice an unknown speed is unsafe or excessive would be improper. A jury cannot be allowed to predicate a verdict on mere conjecture or surmise. *Larson v. Thomashow* (1974), 17 Ill. App. 3d 208, 307 N.E.2d 707.

■■ Speed is not negligence per se, but may become an act of negligence under particular circumstances. (*Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1970), 121 Ill. App. 2d 445, 257 N.E.2d 216, *aff'd*, 49 Ill. 2d 118, 273 N.E.2d 809 (1971).) The circumstances pointed to by plaintiff here are that the siding track was in good condition, the weather was clear, the track had a fairly steep downgrade, and the siding curved to the east as it entered plaintiff's property. Plaintiff, relying on these facts, contends essentially that the mere fact the derailment occurred under such circumstances is a prima facie showing that the speed must have been unreasonable. However, it is well settled that a claim of negligence may not be inferred from the mere fact of an accident or injury. (*Gray v. Schottmiller* (1974), 18 Ill. App. 3d 812, 310 N.E.2d 750; *Summers v. Hopwood* (1970), 125 Ill. App. 2d 441, 261 N.E.2d 36.) Simply put, plaintiff has failed to set forth evidence tending to prove its allegation that defendant caused its railroad cars "to move at a dangerous and unsafe rate of speed." Where no evidence is introduced tending to prove the allegation of the complaint, or if but a bare scintilla of evidence has been adduced, the trial court should direct a verdict for defendant. *Lovejoy v. National Food Stores, Inc.* (1973), 12 Ill. App. 3d 982, 299 N.E.2d 816.

■■ Plaintiff cites a number of cases for the long-established proposition that speed need not be established in miles per hour, but that witnesses may instead characterize a vehicle as moving "fast" or "very fast." (See, *e.g., Overtoom v. Chicago & Eastern Illinois R.R. Co.* (1899), 181 Ill. 323, 54 N.E. 898; *Breslin v. Bates* (1973), 14 Ill. App. 3d 941, 303 N.E.2d 807.) While this proposition is certainly correct, it does not change our decision in this case. First, such characterizations of speed differ significantly from Ziegler's testimony that the train was going twice as fast as usual, yet no evidence is introduced concerning the usual speed. Second, in the cases cited by plaintiff such testimony constituted only a portion of the total evidence bearing on negligence. Here Ziegler's testimony is the only evidence of negligence. We do not believe the cases cited by plaintiff require submission of the negligence issue to a jury based solely on the testimony herein.

■■ In addition to concluding that no negligence was shown, we also

find that plaintiff's evidence did not tend to prove the essential element of proximate causation. Either finding is in itself sufficient to sustain the action of the trial court.

Assuming *arguendo* that the speed at which the train entered the siding was unsafe, the trial court duly recognized that the derailment occurred in such a manner as to negate speed as its cause. The train was traveling in a northeasterly direction going into the siding so that the force of any speed would tend to push the train toward the north as it went around the curve. However, rather than derailing to the north of the track, which would be consistent with the centrifugal force created by the train's movement, the train derailed to the south of the track. Where conflicting inferences may be drawn from the evidence, the issue becomes a jury question. (*Becke v. Fred A. Smith Lumber Co.* (1973), 9 Ill. App. 3d 563, 292 N.E.2d 572.) However, we believe the only reasonable inference to be drawn from this evidence is that the speed of the train as it rounded the curve on plaintiff's siding was not the cause of the derailment. The trial court could properly consider this inference in its deliberations. A question of law is presented if there is no dispute pertaining to factual matters and no conflicting inferences can be drawn therefrom. (*Schroeter v. Industrial Commission* (1976), 62 Ill. 2d 284, 342 N.E.2d. 3.) Thus, a directed verdict was justified on the issue of proximate causation alone.

■■ Plaintiff's position approaches invocation of the doctrine of *res ipsa loquitur*. While it has not been argued as such, we have considered the possible application of *res ipsa* to the instant case. If the doctrine is applicable then a directed verdict could not be granted for defendant at the close of plaintiff's case. (*Erckman v. Northern Illinois Gas Co.* (1965), 61 Ill. App. 2d 137, 210 N.E.2d 42.) We find, however, that it does not apply.

■■ Under the doctrine of *res ipsa loquitur* when the instrumentality which has caused an injury is shown to be under the management of the party charged with negligence, and the accident is such as in the ordinary course of events would not have happened if those having such management used proper care, the accident itself affords reasonable evidence of negligence in the absence of explanation by the party charged. (*Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 312 N.E.2d 259; *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 207 N.E.2d 305.) Thus, while plaintiff need not show that the speed of the train was the specific cause of the accident under *res ipsa*, before the doctrine may apply plaintiff must first show that the train was the instrumentality which actually caused the accident. This it has failed to do.

Control of the defendant over the accident-causing instrumentality must be exclusive in order to render the doctrine of *res ipsa loquitur*

available. (*Metz v. Central Illinois Electric & Gas Co.*) The possible instrumentalities of damage here are two in number; the train, controlled by defendant, and the track, controlled by plaintiff. Absent the ability to eliminate the track as a possible accident-causing instrumentality, we may not apply *res ipsa* since exclusive control would not be present in defendant. See generally 58 Am. Jur. 2d *Negligence* §§499, 501 (1971).

■■ The evidence presented does not allow elimination of the track as the instrumentality which caused the occurrence. Viewed in its aspect most favorable to plaintiff, the testimony only establishes that there were no abnormalities readily observable in the track on the date of the occurrence. Neither Plotzke nor Ziegler actually measured the track gauge and neither could observe a spread rail condition of one inch absent such a measurement. In addition, the only reasonable inference raised by the direction of the derailment was consistent with inadequate maintenance of the track as the cause of the accident. Therefore, since we are unable to pinpoint the train as the accident-causing instrumentality, and since defendant only had control over the train, *res ipsa* may not apply.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.