(No. 48981.—)

IRENE MURPHY, Appellant, v. WILLIAM MESSER-
SCHMIDT, Appellee.

*Opinion filed October 5, 1977.*

Callis, Schooley, Filcoff & Hartman, of Granite City (William W. Schooley, of counsel), for appellant.

Francis D. Conner, of Belleville, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

Plaintiff, Irene Murphy, was injured as the result of a fall on the porch steps of her residence, owned and maintained by her landlord, William Messerschmidt, defendant. Following a jury trial, a verdict was returned in plaintiff's favor. On appeal, the appellate court ruled that the circuit court of Madison County had committed several evidentiary errors and that, even absent the evidentiary errors, the plaintiff had failed to prove either negligence or that the defendant's conduct was the proximate cause of plaintiff's injury. The appellate court entered a directed verdict in favor of the defendant (41 Ill. App. 3d 659), and this court granted plaintiff leave to appeal.

Plaintiff customarily walked to her job, but on the morning of December 10, 1971, because of a heavy rain, she called a cab. At approximately 6:30 a.m. she left her apartment and approached the front porch steps. She wore wedge-type, composite soled shoes. She carried a purse in one hand and an umbrella in the other. Plaintiff testified that as she stepped off the stoop and onto the first step with her left foot, that foot "went out" from under her. She fell, and slid down the steps on her back. When asked by defendant's attorney whether, at the time of the accident, there was any foreign substance on the steps other than the water from the unusually heavy rain, plaintiff responded, "No sir, just slick." There were no witnesses to the fall.

In the four years that the plaintiff had lived in the defendant's building, she had never slipped on the steps, nor had she ever before had trouble with her shoes sliding or slipping. Plaintiff did recall, however, that on one occasion when she had scrubbed the stoop with water, it had become a "little slick" and she slipped slightly.

Testifying as an adverse witness, the defendant stated

he purchased the house in 1951 and that he and his wife lived on the second floor. In 1952, he removed a wooden front porch floor and steps and replaced them with concrete ones. Defendant had experience in concrete construction and did the work himself. He testified that in finishing the concrete surface he first used a wooden trowel, and then a steel trowel, in order to make the surface "as smooth and good as [he could]." No handrails were installed alongside the steps. There were, however, two porch pillar posts at the top of the steps. Between 1952 and 1971, defendant twice painted the surface of the steps with concrete paint.

Over objection, the plaintiff was permitted to introduce into evidence part of the Building Officials Conference of America, Basic Building Code (Code), which was adopted and incorporated into a 1963 city ordinance. The Code required the installation of handrails on stairways. The ordinance, incorporating the Code, was not admitted into evidence because the trial court apparently found the ordinance inapplicable to preexisting structures. Neither the Code nor the ordinance have, in complete form, been made part of the record.

Also over objection, plaintiff presented as an expert witness a general contractor who testified that he was familiar with the customs and practices in the construction industry since 1951. He stated that in finishing concrete steps it is a common practice to use a wooden trowel rather than a steel trowel, as the former brings the aggregate to the surface and produces a "rough textured finish" while the latter produces a "smooth, slick" surface. He stated that commercial abrasives can be added to cement to give it a rough textured surface, and asserted that it is not a common practice to paint cement stairways, more usually, a coloring substance is added directly to the cement to give it color. He noted that, should a painted,

steel-troweled concrete surface become wet, its slickness would be increased. Finally, the witness testified that it was a custom and practice of the construction industry to install handrails, and that the Code, introduced into 'evidence, reflected the standards observed by the construction industry.

Following the close of plaintiff's case, defendant moved for a directed verdict, which was denied. Defendant then testified that before coming to the United States in 1948, he was employed in Germany by a construction company and had, during that employment, learned concrete construction. He stated that, after he had finished the concrete steps with a steel trowel, their surface was smooth but not slick; that at the time of the accident some of the paint had worn away and the surface of the stairs had a "sandy" texture. No one had ever complained to defendant about the condition of the steps, and he had never encountered any slipperiness.

During closing argument, plaintiff's counsel read to the jury the applicable provision of the Code. An instruction was then given to the jury that the Code was "evidence of a standard of conduct in the construction and alteration of buildings," and that the jury could consider such evidence, along with all other evidence, in determining whether the defendant was in the exercise of ordinary care in the construction and maintenance of his premises.

The appellate court ruled that the trial court erred in admitting the expert witness' testimony and the Code into evidence, and in giving an instruction to the jury that the Code could be considered as evidence of a standard of care.

In *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, this court permitted the use of State hospital regulations, accreditation standards, and

hospital bylaws as evidence of a standard of conduct because they aided the "jury in deciding what was feasible and what the defendant knew or should have known." (33 Ill. 2d 326, 332.) That holding, however, presumed the regulations, standards and bylaws were relevant in terms of both time and conduct involved.

There is no showing in this record that the Code reflected the construction industry standards of 1952, the year the steps were built. Plaintiff argues that, based on this court's recent decision in *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, the Code was properly admitted into evidence whether or not it reflected standards existing in 1952. *Davis* is distinguishable from the instant case. There the court ruled a certain gasoline-storage, safety regulation, enacted subsequent to the defendant's construction work, should have been admitted as evidence of a standard of care because the regulation was "intended to eliminate existing hazards as well as to prevent the creation of future ones." (64 Ill. 2d 380, 392.) Here, the record does not contain a copy of the Code or ordinance, and we are unable to conclude, as did the *Davis* court, that either the Code or ordinance was intended to eliminate existing hazards. We find, therefore, that plaintiff herein failed to lay a proper foundation to establish the Code's relevancy, and that the trial court erred in refusing to sustain the defendant's objections to the Code's introduction and to its consideration by the jury in the form of an instruction. We agree with the appellate court that the defendant was prejudiced when the jury was allowed to consider the Code as evidence of what the defendant knew or should have known at the time he constructed the steps.

The record here also fails to indicate the time frame testified to by the expert witness. Although he stated he was familiar with the customs and practices in the construction industry since 1951, the record does not

show that the customs and practices described in his testimony were in fact the same as those in effect in 1951 and immediately thereafter. If the jury was erroneously led to believe that, in 1952, the customs and practices of installing handrails and of finishing concrete steps were as testified to by the expert when, in fact, this was not the case, defendant was again prejudiced.

Except for the Code and the expert witness' testimony, plaintiff's evidence on the question of defendant's liability was limited to her own testimony, earlier related. Under these circumstances, the trial court's erroneous introduction of the Code and expert witness' testimony constituted reversible error, and the appellate court was correct in arriving at this conclusion.

The appellate court, however, refused to reverse the judgment solely on the basis of the evidentiary errors, and, instead, entered a directed verdict in defendant's favor on the grounds that plaintiff failed to prove negligence and failed to prove that the defendant's conduct was the proximate cause of her injury. From the appellate court's opinion, it is apparent that, for the purpose of the directed verdict, the appellate court assumed all of plaintiff's evidence to have been properly admitted. Were we to accept the appellate court assumption we would, nevertheless, find that the court misapplied the proper standard. It disregarded some of the plaintiff's circumstantial evidence and limited itself to defendant's direct evidence. It refused to consider the reasonable inference of negligence which could be drawn from findings which the court assumed for the purposes of its opinion, and erroneously made findings of fact which should have properly been made by the jury.

The court held plaintiff had failed to establish negligence in that, "despite the testimony of the contractor, the only evidence as to the actual condition of the finish on the porch and steps was defendant's testimony

that it was 'sandy' or 'grainy.' " (41 Ill. App. 3d 659, 663.) At the outset we note that at no time during the trial did defendant testify that the surface was "grainy." He did, however, state that he used a steel trowel to produce as smooth a surface as possible. Furthermore, the plaintiff testified that the surface of the steps was "slick" on the morning of the accident.

In entering a directed verdict, the appellate court had to decide whether, when all the evidence and all reasonable inferences were considered in a light most favorable to the plaintiff, the evidence so overwhelmingly favored the defendant that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.) It is clear from the court's analysis, above, that it limited itself to the defendant's direct evidence on the condition of the steps and totally ignored the reasonable inference of negligence that could be drawn from the plaintiff's expert witness' circumstantial testimony. Negligence can be proved by either direct or circumstantial evidence. (*Walsh v. Finley* (1972), 51 Ill. 2d 174, 176.) From the expert witness' testimony, a jury could have reasonably concluded that the defendant, a man admittedly experienced in concrete construction, improperly and carelessly finished the concrete steps, leaving a smooth, slick surface which, when wet, was even more slick, and that such condition existed on the date of the accident in accordance with plaintiff's testimony.

For the purpose of its opinion, the appellate court assumed that the defendant had a duty to install handrails, yet it did not address this fact in its analysis of the question of negligence. It ignored the reasonable inference of negligence which could have been drawn from its own assumption. We conclude, therefore, that the court erred in ruling that plaintiff's evidence totally failed to prove negligence.

The appellate court apparently refused to address the handrail issue in its negligence analysis in part because it found that, since plaintiff admitted her hands were filled at the time of the fall and that she did not attempt to grasp the pillar post near the top step, defendant's failure to install handrails could not have been a cause of the accident. According to the court's interpretation of the evidence, the accident was caused by the severity of the rain, not by any inherent condition of the porch or steps. These were questions of fact for the jury to decide. (*Ney v. Yellow Cab. Co.* (1954), 2 Ill. 2d 74, 84. See also *O'Donnell v. Barach* (1953), 1 Ill. App. 2d 157, 161; *Doran v. Boston Store* (1940), 307 Ill. App. 456, 461.) A verdict should not and will not be set aside merely because the jury could have found differently or because judges feel that other conclusions would be more reasonable. (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 623.) By substituting its opinion for that of the jury, the appellate court usurped the function of the jury.

Accordingly, the appellate court erred in directing a verdict in defendant's favor.

However, because of the evidentiary errors, the appellate court's reversal of the circuit court of Madison County is affirmed, and the cause is remanded to the circuit court for a new trial.

*Affirmed and remanded.*