FRISCH CONTRACTING SERVICE CORP., Plaintiff-Appellant, *v.* NORTHERN ILLINOIS GAS COMPANY *et al.*, Defendants-Appellees.

Second District    No. 79-555

Opinion filed February 26, 1981.—Rehearing denied March 26, 1981.

Randel Baudin, of Zukowski, Zukowski, Poper & Rogers, of Crystal Lake, for appellant.

Richard J. Loeffler, of Van Duzer, Gershon, Jordan & Peterson, of Chicago, and Gerald M. Sheridan, Jr., of Wheaton, and Robert F. Casey and George E. Krippner, both of Geneva, for appellees.

Mr. JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Frisch Contracting Service Corp., instituted this negligence action for property damage, alleging that a gas main installed by de-

fendant Smith Construction Company and gas service pipes installed by defendant Northern Illinois Gas Company punctured a sewer system being installed by plaintiff, and that, as a result, plaintiff incurred expenses in excess of $15,000, in reexcavating and replacing the system. On appeal, plaintiff contends that the trial court erred in directing a verdict for damages of only $4,000 against defendant Northern Illinois Gas Company.

Trial was by jury. The verdict for Smith Construction Company was directed at the close of plaintiff's case, on the trial court's finding that plaintiff established negligence, but failed to establish proximate cause. The court directed a verdict against Northern Illinois Gas Company after Northern Illinois Gas Company rested without presenting any evidence. Then the trial court directed a verdict as to damages finding that the "only competent" evidence of damages was in the amount of $4,000.

We reverse both the directed verdict in favor of Smith Construction Company and the directed verdict on damages as to Northern Illinois Gas Company.

In 1972, plaintiff contracted with a general contractor to install the following underground sewer improvements in a Village of Hampshire, Illinois subdivision: (a) a 1200-foot sewer main, which ran east-west, and was laid on a slope, 12 feet below road grade at its western-most point, and 3-6 feet below road grade at its eastern-most point; and (b) sewer service or lateral pipes about 30 feet in length, which joined the sewer main and sloped upward to the property lines on the north and south sides of the main. Manholes were located at each end of the main and at 400-foot intervals. Plaintiffs completed the installation in June 1972, and needed to be certified by the village for conformity with certain infiltration standards.

Defendants subsequently installed underground gas improvements. In October 1972, under contract with Northern Illinois Gas Company, defendant Smith Construction Company installed a gas main parallelling plaintiff's sewer on the north; the main was located five feet off the north property lines. In January 1973, Northern Illinois Gas Company itself installed gas service lines running from the gas main to lots on the north and south sides of the sewer and gas mains. It appears that both the gas main and services were laid at a uniform depth of 30-36 inches; that the actual depth could have been 8 inches deeper, since depth was determined by road grade at the time of installation, rather than finished road grade; and that neither Smith Construction Company nor Northern Illinois Gas Company attempted to locate the sewer system during installation because both expected that sewer pipes would be laid below the frost line, or at least four feet below the ground.

Thereafter, during testing required by the village, the sewer system

exhibited problems. In July 1973, an infiltration test was conducted over the main in sealed, 400-foot segments. At that time, the water table was high, but did not immerse the entire system. The test indicated that a grossly excessive amount of water was seeping into the deep, western-most segment; that seepage was only minimally excessive in the middle segment; and that the shallow, eastern-most segment had no infiltration problems. Over the course of three weeks, and with the help of a television visualization, about 12-14 problems were located in the deep and middle segments, none attributed to either defendant's negligence. After repair, and in August or September, 1973, the system passed infiltration tests. Shortly thereafter, plaintiff's system was required to undergo an exfiltration test to determine the amount of water seeping out of the sewer when sealed. An initial nonsegmented test was conducted, and the system failed this test. A second test was then conducted, the results of which are disputed. Following the second exfiltration test, and continued failure to pass exfiltration standards, and on the advice of a long-time business colleague, Marvin Frisch, plaintiff's president, decided to reexcavate and replace the entire system, and hired the DuPons Construction Company to help with this job.

In the course of reexcavation, sometime after mid-October 1973, damage to the main and laterals, which is the subject of this lawsuit, was discovered. During excavation of the sewer main, workers found four instances in which Northern Illinois Gas Company's gas service pipes perforated the sewer main by driving the service pipes through the sewer main. The perforations were located in the shallow and middle section of the main. During excavation of the sewer laterals, which followed complete replacement of the sewer main, workers found that at least two sewer laterals, located in an area corresponding to the shallow 400-foot segment of the main, had been severed at points proximate to Smith Construction Company's gas main installation. Charles Shore, an employee of DuPons Construction Company, who observed the severed laterals, described it in this manner: "I saw the pipe that was severed, and below that pipe that was severed was our clay sanitary sewer lateral. Below the clay lateral in the area that was severed was the gas main; pieces of the clay lateral lay in the trench below the gas main."

The first issue presented for our review is whether plaintiff's evidence was sufficient to withstand a directed verdict for Smith Construction Company. Since the trial judge specifically found as a matter of law that the evidence did not establish that the severed laterals proximately caused the sewer system to fail exfiltration tests, we confine our analysis primarily to the proximate-cause issue. According to plaintiff's expert, Henry Uteg, licensed engineer and project supervisor for the subdivision, a puncture anywhere in the sewer system would cause it to fail a

nonsegmented exfiltration test; however, in a test conducted over 400-foot sealed segments the cause of exfiltration failure could be attributed only to punctures located within a segment that failed the segmented test. The parties don't dispute that the first test was conducted in a nonsegmented manner and that the system failed the exfiltration test. The dispute is confined to the second test. Plaintiff claims that it also was a nonsegmented test which failed exfiltration requirements therefore establishing proximate cause. Defendant claims that it was conducted in 400-foot segments, and that the shallow segment, corresponding to the severed laterals, passed, thus requiring a conclusion that the severed laterals were not the proximate cause of the exfiltration failure.

Plaintiff relies on the testimony of Marvin Frisch to the following effect. After learning of the results of the first test, he ordered a second test and was present to observe the test. It, too, was conducted in a nonsegmented manner, and the system failed the test. He did not order a segmented test. It was unnecessary, since the earlier segmented infiltration test showed that the shallow and middle segments were "all right." It was also impossible to do, since the company did not own, nor had it rented or borrowed, sufficient equipment to perform the test in that manner. On cross-examination he acknowledged a prior deposition statement that he couldn't recall whether a segment or nonsegmented test was done, but said his recollection was exactly as he testified.

Defendant relies on the testimony of plaintiff's employee, Roger Haeger, who stated substantially the following: on Marvin Frisch's order, a second test was conducted in sealed 400-foot segments, but he could not recall the results of the test. He acknowledged a prior deposition statement that the shallow and middle 400-foot segment passed the test, but said he "would have assumed those sections passed exfiltration tests, since they passed infiltration tests." Following the second exfiltration test, he visually checked the area, including the points along laterals proximate to the gas main, and saw no water bubbles on the ground.

■■ Plaintiff has the burden of proving that its injury was proximately caused by defendant's negligence, and determining proximate cause is "preeminently for the jury." (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 117 N.E.2d 74; see also, *Murphy v. Messerschmidt* (1977), 68 Ill. 2d 79, 87, 368 N.E.2d 1299.) A directed verdict is proper if causation is not shown. (*Driscoll v. C. Rasmussen Corp.* (1966), 35 Ill. 2d 74, 79, 219 N.E.2d 483; *Hagerman v. National Food Stores, Inc.* (1972), 5 Ill. App. 3d 439, 283 N.E.2d 321.) The standard of *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, governs the propriety of a directed verdict as to the proximate cause issue. (*Hagerman v. National Food Stores, Inc.* See also *Murphy v. Messerschmidt* (1977), 68 Ill. 2d 79, 86, 368 N.E.2d 1299; and *Ohligschlager v. Proctor Community Hospital*

(1973), 55 Ill. 2d 411, 416, 303 N.E.2d 392.) A verdict "ought to be directed * * * only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.) The *Pedrick* standard does not permit the trial court to resolve issues of credibility or weigh the evidence on the motion for directed verdict. (*Spidle v. Steward* (1980), 79 Ill. 2d 1, 10, 402 N.E.2d 216.) However, the presence of some evidence favorable to nonmovant does not always bar a directed verdict, as where the evidence loses significance in the context of all other evidence. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 504-05; *Belleville National Savings Bank v. General Motors Corp.* (1974), 20 Ill. App. 3d 707, 313 N.E.2d 631.

■■ The pivotal issue in our review of the directed verdict for Smith Construction Company is the significance to be accorded Haeger's testimony concerning the second exfiltration test. Haeger's testimony aside, plaintiff submitted evidence of proximate cause by its witnesses' testimony concerning failure of the first test, and Frisch's testimony concerning failure of the second test. This coupled with the evidence that the sewer services were put in first and the gas main subsequently, and the testimony that the gas main was later located *below* the severed sewer services, were sufficient facts of proximate cause to reach a jury. We do not agree with defendant's argument that Haeger's testimony conclusively established that the damaged laterals were not the cause of the exfiltration failure. At best his testimony suggested that a segmented test was done and that some segment(s) passed: at trial he qualified the accuracy of his own deposition statement; beyond his own qualification, the deposition statement itself indicates that Haeger may have confused the exfiltration test with infiltration tests. We therefore cannot view Haeger's testimony as substantive evidence which renders impossible or weakens to insignificance other evidence of exfiltration failure, making directed verdict proper for that reason. *Publication Corp. v. Chicago River & Indiana R.R. Co.* (1977), 49 Ill. App. 3d 508, 364 N.E.2d 523; *Belleville National Savings Bank v. General Motors Corp.* (1974), 20 Ill. App. 3d 707, 313 N.E.2d 631.

■■ To the contrary, we feel that Haeger's testimony merely interposed on the proximate cause question the problem of determining credibility and assigning weight to all testimony concerning causation. Under the rule of *Pedrick*, credibility and weight questions were not to be resolved by the trial court on motion for directed verdict, but by the jury.

Defendant also contends that the directed verdict in its favor was proper since plaintiff's evidence raised the possibility that the laterals were damaged by the general use of heavy machinery in the area following Smith Construction Company's installation. Further, Smith

contends that the severing of the sewer laterals may have occurred during the reexcavation of those laterals and the sewer main. In this vein, Smith Construction Company apparently refers to the testimony of DuPons employee Charles Shore, as well as that of Haeger. Haeger testified that heavy construction was being done while plaintiff was performing the sewer tests. One severed lateral was found on the north side of the main, apparently damaged by heavy construction. Additionally, severed laterals were found on lots all along the south side of the main, damaged by unknown causes. Shore testified that a four-ton backhoe was used to reexcavate the laterals; that it was driven backwards from the main along each lateral and ripped the lateral out in pieces. The motion of the backhoe at one end of the lateral could have jarred and cracked portions of the lateral at the opposite end. However, he was of the opinion that the two laterals were not severed in this manner.

■■ We are not persuaded that the matter was any less a jury question by virtue of evidence that the laterals might not have been damaged by Smith's negligence, but by heavy machinery, following Smith Construction Company's installation of the main or even during excavation of the laterals. Plaintiff was not required to disprove every hypothesis suggesting a cause other than defendant's negligence. (*May v. Columbian Rope Co.* (1963), 40 Ill. App. 2d 264, 273, 189 N.E.2d 394; *Foster v. Union Starch & Refining Co.* (1956), 11 Ill. App. 2d 346, 353, 137 N.E.2d 499; see also *Ohligschlager v. Proctor Community Hospital* (1973), 55 Ill. 2d 411, 419, 303 N.E.2d 392.) Viewing the evidence and the reasonable inferences therefrom in a light most favorable to plaintiff, we feel there were sufficient facts for a jury determination. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

■■ Our disposition of this issue on the theory of negligence specifically pleaded does not require us to determine whether the theory of *res ipsa loquitur* as advanced by the plaintiff on appeal was pleaded in its amended complaint so as to give sufficient notice of that cause of action in order to be raised on appeal. (*Spidle v. Steward* (1980), 79 Ill. 2d 1, 402 N.E.2d 216.) It is well established that an appellate court will not consider different theories or new questions not presented at trial. *Hux v. Raben* (1967), 38 Ill. 2d 223, 230 N.E.2d 831; *First National Bank & Trust Co. v. City of Rockford* (1977), 47 Ill. App. 3d 131, 361 N.E.2d 832.

For these reasons, we conclude the trial court erred in directing a verdict for defendant Smith Construction Company, and we reverse the judgment in favor of Smith Construction Company.

The next issue we consider is whether the trial court erred in directing a verdict against Northern Illinois Gas Company for damages of $4,000, in light of plaintiff's evidence that plaintiff's actual cost for excavating and replacing the sewer system was $45,123.07. Preliminarily, the plaintiff

raises the issue of whether a trial judge may direct a verdict on damages on his own motion. While the record is ambiguous as to whether the trial judge actually directed the verdict on damages on his own motion or in response to arguments submitted by Northern Illinois Gas Company's counsel, we believe that a trial judge does have that authority when warranted under the evidence. *Germania Federal Savings & Loan Assn. v. Jacoby* (1974), 23 Ill. App. 3d 145, 318 N.E.2d 734; *Freeman v. Chicago Transit Authority* (1964), 50 Ill. App. 2d 125, 200 N.E.2d 128.

Both parties concede, and we agree, that the proper measure of damages in this case is the reasonable cost of necessary repair. Illinois Pattern Jury Instructions, Civil, No. 30.11 (2d ed. 1971); *Behrens v. W.S. Bills & Sons, Inc.* (1972), 5 Ill. App. 3d 567; 283 N.E.2d 1; *Arras v. Columbia Quarry Co.* (1977), 52 Ill. App. 3d 560, 367 N.E.2d 580.

The direct and cross-examination testimony of plaintiff's witnesses produced conflicting figures for the reasonable, necessary expense of repair, one of which is relied on by defendant to justify the directed verdict for damages. Through its president and a bookkeeper, plaintiff introduced the actual method of repair undertaken, reexcavation and replacement of the sewer, and plaintiff's actual cost, $45,123.07. Plaintiff's president, Marvin Frisch, said this course was elected following failure of the second exfiltration test, on the advice of an experienced business colleague, and because of his own feeling that this was the "only remedy" available at that point. He hired DuPons Construction to help with the project. The bookkeeper testified that plaintiff's actual cost included $10,962.68, the amount for which DuPons billed plaintiff, as well as about $34,000, representing plaintiff's labor and material costs and its profit and overhead allowances. These figures were verified by witnesses Arthur DuPons, Sr., and Marvin Frisch. In contrast to the method actually undertaken, cross-examination testimony of plaintiff's witnesses Uteg and Shore suggested a simpler method of repair: collaring and chemically bonding a piece of pipe over each of the four punctures. Uteg conceded that this would cost approximately $1,000 for each puncture or $4,000 totally. His estimate included the cost of locating the punctures by television only. He and Shore testified that the collaring and bonding method would still entail the initial difficult task of locating all of the punctures causing exfiltration failure.

Plaintiff contends that the question of damages was one of fact for the jury and, alternatively, that if a verdict should have been directed, it should have been directed for the full actual cost of replacement, *i.e.*, $45,123.07. Defendant argues that plaintiff's replacement of the sewer system was, as a matter of law, unreasonable and unnecessary and that a directed verdict for $4,000, representing the cost of repair by collaring and bonding, was proper.

The general rule in Illinois is that "the question of damages is peculiarly one of fact for the jury." (*Flynn v. Vancil* (1968), 41 Ill. 2d 236, 240, 242 N.E.2d 237.) Usually the context in which that rule arises is after a jury verdict, on a motion to modify it. (See *Montgomery v. Terminal Railroad Association* (1979), 73 Ill. App. 3d 650, 392 N.E.2d 77; *Jumer v. Henneberry* (1978), 61 Ill. App. 3d 422, 377 N.E.2d 1328.) The only Illinois case our research disclosed in which a court of review addressed the issue of whether the trial court was justified in directing a verdict on damages in a property damage action is *Collgood, Inc. v. Sands Drug Co.* (1972), 5 Ill. App. 3d 910, 284 N.E.2d 406. The holding of the *Collgood* court on that issue was:

> "[W]here the plaintiff offers substantial credible evidence to show the amount of his loss in damages to personal property and that evidence is both reasonable on its face and undisputed by the defendant, the trial court may be justified in directing a verdict on that evidence." (*Collgood, Inc. v. Sands Drug Co.* (1972), 5 Ill. App. 3d 910, 920.)

We agree that assessment of the amount of damages in a property damage negligence case is ordinarily a question to be left for the jury. But if the damage evidence is reasonable and undisputed as stated in *Collgood*, there may be occasions when a property damage question can be decided by the trial judge as a matter of law. We urge caution in this respect due to the inherent and general lack of conclusiveness of damage evidence even when no contrary evidence is offered.

■■ In this case, the issue of damages was disputed by competent evidence and was clearly a jury question. The assessment of damages entailed initial resolution of a key factual issue: what constituted reasonable and necessary repair under the circumstances. From Uteg's and Shore's testimony, a jury might well have concluded that the reasonable repair was collaring and bonding at a cost of $4,000. But a jury might equally well have concluded that the expenditures for reexcavation and replacement was reasonable and necessary, in light of evidence of the time and expense that might be involved in first locating, and then repairing, the sources of exfiltration problems. There was testimony that location of infiltration problems was a lengthy tedious process notwithstanding a segmented test; that exfiltration failure could be caused by problems anywhere in the entire system; that although the main could be tested quickly by television, testing of the laterals could be an expensive, difficult process; that reexcavation was recommended to plaintiff by someone with experience in the field, and that plaintiff's president thought it was the "only remedy" available. Whether the plaintiff was justified, under the facts, in digging up the sewer system or whether the alternative urged by defendant was reasonable, and what damages should

be assessed, were all disputed, evidentiary facts for the jury to determine.

We therefore reverse the trial court's judgment as to the issue of damages. In so holding we do not say that plaintiff's evidence warranted a higher verdict, but only that the question of damages was, in this case, for the jury. For the same reasons outlined in the foregoing analysis, we must disagree with plaintiff that a verdict of $45,123.07 should have been directed.

■■ In its brief, defendant Northern Illinois Gas has asked, alternatively, that if we reverse on the damages issue, that we grant a new trial as to its liability. The correctness of the directed verdict as to liability against Northern Illinois Gas is not an issue properly before this court, as defendant did not assign it as error in a properly prosecuted cross-appeal, and it is not related to the issues raised by plaintiff in his appeal against this defendant. (*King v. Corsini* (1975), 32 Ill. App. 3d 461, 335 N.E.2d 561; *National Football League Properties, Inc. v. Dallas Cap & Emblem Mfg., Inc.* (1975), 26 Ill. App. 3d 820, 327 N.E.2d 247.) Defendant, having failed to prosecute a cross-appeal, is in no position to request affirmative relief from this court. *Ashton v. Sweeny* (1953), 350 Ill. App. 135, 112 N.E.2d 183.

We therefore reverse the judgment for damages against defendant Northern Illinois Gas Company and remand for a new trial confined to the issue of damages; and reverse the judgment in favor of defendant Smith Construction Company and remand for a new trial.

Reversed and remanded.

UNVERZAGT and LINDBERG, JJ., concur.