**PENNSYLVANIA TRUCK LINES, INC., Plaintiff–Counterdefendant–Appellant,**

v.

**SOLAR EQUITY CORPORATION, Defendant–Counterplaintiff–Appellee.**

Nos. 87–1813, 88–1904.

United States Court of Appeals, Seventh Circuit.

Argued May 19, 1989.

Decided Aug. 3, 1989.

222

Richard M. Kates, Chicago, Ill., for Pennsylvania Truck Lines, Inc.

Mitchell H. Frazen, Ruberry, Phares, Abramson & Fox, Chicago, Ill., for Solar Equity Corp.

Before FLAUM and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Pennsylvania Truck Lines, Inc. ("PTL") originally brought this breach of contract action against Solar Equity Corporation ("Solar") for declaratory judgment.[1] Solar filed a counterclaim against PTL, seeking in part damages from PTL's alleged breach of contract, interest, and costs (including

---

1. The district court's jurisdiction was based on diversity of citizenship pursuant to 28 U.S.C. § 1332. PTL is a Pennsylvania corporation, with its principal place of business in Pennsylvania. Solar is an Ohio corporation, with its principal place of business in Ohio.

reasonable attorney fees). At trial, Solar moved for a directed verdict on the ground that PTL failed to prove damages, and PTL moved for leave to file an amended complaint to include a second count for damages in addition to its declaratory judgment count. The district court granted PTL's motion to amend the complaint, but it also granted Solar's motion for directed verdict on the issue of damages. The court ruled that PTL failed to show that it suffered damages (injury) and that it did not present sufficient evidence from which the jury could determine the amount of damages sustained. Subsequently, the jury entered a verdict in favor of Solar on the first part of Solar's counterclaim, awarding it $40,-555.75 in damages, but found for PTL on the second part of Solar's counterclaim. After the trial, the district court granted Solar's motion to amend the judgment to include interest, costs, and reasonable attorney fees and eventually awarded Solar $61,573.31 for costs and attorney fees. 127 F.R.D. 127. The court also entered judgment *nunc pro tunc* in favor of Solar as to the remaining portion of PTL's declaratory judgment count.

On appeal, PTL raises two distinct issues. First, PTL argues that the district court erred in granting Solar's motion for directed verdict as to the issue of damages. PTL contends that it presented sufficient evidence from which the jury could have determined that it suffered damages and the amount of damages sustained. Second, PTL contests the amount of money the court awarded to Solar for costs and attorney fees. For the reasons discussed below, we affirm the judgment of the district court.

## I

In 1974, pursuant to five separate lease agreements, Solar leased to PTL 500 piggyback trailers.[2] Each lease covered 100 trailers and lasted for an initial term of eight years. At the end of eight years, the leases continued in effect on a monthly basis until PTL gave Solar a thirty-day notice of its intent to terminate them. The leases provided that both Solar and PTL had to agree to designate a location at which PTL could return the trailers and that PTL had to return the trailers in good working order. The leases also provided that Solar was entitled to all costs (including reasonable attorney fees) incurred in enforcing its rights under the lease.

During the term of the leases, all went well between the parties. Their relations soured, however, when PTL tried to terminate the leases at the end of their eight-year terms. On July 13, 1982, PTL gave Solar written notice that it was terminating one of the leases whose initial eight-year term was due to expire on June 28, 1982. As part of the notice, PTL suggested eleven different cities at which it would be willing to return the trailers. On August 2, 1982, PTL sent Solar another termination notice for a second lease whose eight-year term was due to expire on September 18, 1982. As part of this termination notice, PTL again listed eleven cities at which it was willing to deliver the trailers. Solar, however, did not designate a city to which PTL could return the trailers.

On August 27, 1982, PTL sent a letter to Solar reminding Solar that PTL had sent notices terminating two of the leases. In this letter, PTL requested that Solar choose a city to which it wanted the trailers returned. Shortly thereafter, PTL sent Solar a third termination notice for the other three leases whose eight-year terms expired on November 11, 1982, December 19, 1982, and December 23, 1982, respectively. Once again, PTL suggested eleven different cities to which it was willing to deliver the trailers. In this letter, PTL requested that Solar respond to PTL's earlier termination notices by picking a city, and PTL informed Solar that it would not pay any rent past the original expiration dates of the leases.

In response to PTL's requests, Solar informed PTL that Solar would not designate

2. One of the leases was originally between PTL and Sims Brothers Iron & Steel Scrap, Inc., but Solar purchased the rights to it.

a place of return until it inspected the trailers to determine what repairs were necessary and later reinspected the trailers to make sure that PTL had properly repaired them. Only after an inspection and reinspection would Solar choose a city to which PTL could deliver the trailers. PTL, however, would not repair the trailers before delivering them because it did not want to risk repairing them a second time, in the event that the trailers were damaged in transit to the designated place of return. The parties were unable to settle their dispute, and thus, PTL was stuck with the trailers. Since PTL did not have sufficient space to store these trailers, it stored them on property belonging to Consolidated Rail Corporation ("Conrail"), the parent corporation of PTL.

While the trailers were in storage, Solar sold some of them. After Solar made a sale, it would then designate a city as the place of return for some of the trailers, even though Solar apparently had not inspected these trailers. By June 1983, however, PTL still had almost 400 trailers that it wanted to return and that Conrail wanted removed from its property.

On March 7, 1983, Conrail sent Solar a letter, which stated that if Solar did not choose a place of return for the trailers within ten days, Conrail would start to assess storage charges of $5.00 per day per trailer. When Solar still would not designate a place of return, Conrail started to send bills to Solar for the storage charges and then filed an action against Solar in court because Solar would not pay the bills. Conrail eventually dropped this lawsuit.

On October 13, 1983, PTL filed a one-count complaint against Solar,[3] seeking declaratory judgment to the effect that PTL properly terminated the leases and that Solar owes PTL $5.00 per day per trailer in storage charges. Solar filed a three-count

counterclaim seeking in part damages, interest, and costs (including reasonable attorney fees) for breach of contract. Although the parties eventually entered into an agreement on returning the trailers, they were unable to settle their dispute over the storage charges. On April 5, 1985, Solar filed an amended counterclaim seeking damages, interest, and costs (including reasonable attorney fees) for PTL's breach of contract. Solar premised its counterclaim on two grounds: (1) PTL failed to pay rent pursuant to the terms of the leases from the date of the expiration of the original eight-year terms until PTL returned the trailers; and (2) PTL failed to properly repair the trailers before returning them.

Beginning on February 26, 1987, the parties tried this case before a jury. At the close of PTL's evidence, Solar moved for directed verdict on the issue of damages. PTL then moved for leave to amend orally its complaint to include a second count for damages. The district court granted PTL's motion to amend its complaint, but it also granted Solar's motion for directed verdict on the issue of damages. The district court ruled that PTL had failed to show that it suffered damages (injury) and that it had failed to present sufficient evidence from which the jury could make a determination of the amount of damages sustained. The trial subsequently continued, and the jury rendered a verdict in favor of Solar on the first part of its counterclaim for rent, awarding Solar $40,555.75 in damages. The jury, however, returned a verdict in favor of PTL on the second part of Solar's counterclaim for repairs.

Solar filed a post-trial motion to amend the judgment to include interest, costs, and reasonable attorney fees. The district court granted Solar's motion to amend the judgment and eventually awarded it $61,-573.31 for costs and attorney fees. The

---

**3.** In its original complaint, PTL filed suit against Solar and Richard E. Leader. On August 2, 1983, Solar assigned its rights in the trailers and the leases to Richard E. Leader, apparently as agent of Intermodal Trailer Placement, Inc. ("ITP") and REL Leasing, Inc. ("REL"). *See* Exhibit No. 58. Thus, at the time PTL filed suit, it may have been unclear who actually owned

the trailers and leases. Because PTL would not surrender the trailers, ITP, REL, and Solar cancelled the assignment of the trailers and leases. *See* Exhibit No. 63. Neither ITP, REL, or Leader was a party to this suit in the district court, and PTL did not name any of them as defendants in its amended complaint. *See* Plaintiff's Amended Complaint, Rec. 98.

district court also entered judgment *nunc pro tunc* (dating back to the date the jury verdict was docketed) against PTL on the remaining portion of its declaratory judgment count.

## II

PTL argues that the district court erred in granting Solar's motion for directed verdict on the issue of damages. In cases in which the district court's jurisdiction rests on diversity of citizenship, state law governs the standard of review for determining whether the district court properly granted a motion for directed verdict. *E.g., Bethlehem Steel Corp. v. Chicago E. Corp.*, 863 F.2d 508, 512–13 (7th Cir.1988); *Goldman v. Fadell*, 844 F.2d 1297, 1301 (7th Cir.1988). Therefore, our court must turn to the law of the forum state, Illinois, in deciding whether the district court erred in granting Solar's motion for directed verdict. *See Patton v. Mid–Continent Sys., Inc.*, 841 F.2d 742, 749 (7th Cir.1988); *Twohy v. First Nat'l Bank*, 758 F.2d 1185, 1189 (7th Cir.1985).

Under Illinois law, a trial court should direct a verdict "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & E.R.R.*, 37 Ill.2d 494, 229 N.E.2d 504, 513–14 (1967); *accord Schmidt v. Archer Iron Works, Inc.*, 44 Ill.2d 401, 256 N.E.2d 6, 8, *cert. denied*, 398 U.S. 959, 90 S.Ct. 2173, 26 L.Ed.2d 544 (1970); *First Nat'l Bank v. Shape Magnetronics, Inc.*, 135 Ill.App.3d 288, 90 Ill.Dec. 153, 155, 481 N.E.2d 953, 955 (1985). This standard does not require a complete lack of evidence to support the nonmovant's claim. Rather, a directed verdict is still proper when there is only a mere scintilla of evidence to support the nonmovant's allegations, *see Cokinis v. Maywood–Proviso State Bank*, 81 Ill. App.3d 1057, 36 Ill.Dec. 939, 945, 401 N.E.2d 1077, 1083 (1980); *Publication Corp. v. Chicago River & Ind. R.R.*, 49 Ill.App.3d 508, 7 Ill.Dec. 362, 365, 364 N.E.2d 523, 526 (1977), or when there is

some evidence supporting the nonmovant's claim which loses its significance when viewed in the context of all the evidence, *see Romero v. Ciskowski*, 137 Ill.App.3d 529, 92 Ill.Dec. 295, 299, 484 N.E.2d 1150, 1154 (1985); *Frisch Contracting Serv. Corp. v. Northern Ill. Gas Co.*, 93 Ill. App.3d 799, 49 Ill.Dec. 243, 247, 417 N.E.2d 1070, 1074 (1981). The trial court, however, may not resolve issues of credibility or weigh the evidence on a motion for directed verdict, *Frisch Contracting Serv.*, 49 Ill.Dec. at 247, 417 N.E.2d at 1074; *Reynolds v. American Oil Co.*, 32 Ill. App.3d 905, 337 N.E.2d 403, 405 (1975), because controverted issues of fact are for the jury to decide, *Ziegert v. South Chicago Community Hosp.*, 99 Ill.App.3d 83, 54 Ill.Dec. 585, 593, 425 N.E.2d 450, 458 (1981).

The issue of damages consists of two aspects. "The first is the fact of damage itself, which requires the showing of a causal connection between defendants' actions and plaintiff's injury. The second is the determination of the extent of damages, which requires that a monetary value for the damages claimed be established." *Vandermyde v. Chicago Transit Auth.*, 73 Ill.App.3d 984, 29 Ill.Dec. 491, 497–98, 392 N.E.2d 48, 54–55 (1979) (citations omitted); *see also Briarcliffe W. Townhouse Owners Ass'n v. Wiseman Constr. Co.*, 134 Ill. App.3d 402, 89 Ill.Dec. 351, 357, 480 N.E.2d 833, 839 (1985) (stating that the plaintiff must establish that he sustained damages and a reasonable basis for computation of those damages); *Finance Am. Commercial Corp. v. Econo Coach, Inc.*, 118 Ill. App.3d 385, 73 Ill.Dec. 878, 882, 454 N.E.2d 1127, 1131 (1983) (same). The district court ruled that PTL failed to prove both aspects of damages and thus, granted Solar's motion for directed verdict. *See* Tr. at 493–95. PTL contests the district court's ruling. PTL claims that it presented sufficient evidence to show both damages and a reasonable basis for computing the monetary value of those damages.

PTL first argues that it presented ample evidence to show that it sustained damages from Solar's alleged breach of

contract. In essence, PTL claims that it presented evidence which showed that because Solar wrongfully refused to designate a place of return, PTL had to store the trailers on Conrail's property and that PTL is now liable to Conrail for $5.00 per day per trailer as a storage charge. After reviewing the evidence in its entirety, we reject PTL's argument. Although there is undisputable evidence that PTL stored the trailers on Conrail's property, there is no evidence to show that Conrail intended to collect the storage charges from PTL and thus, that PTL sustained damages.

During the trial, PTL presented evidence which allegedly showed: (1) that PTL and Conrail had agreed to a $5.00 per day per trailer storage fee; (2) that Conrail's books show a receivable due from PTL for the storage charges; and (3) that Conrail eventually billed PTL for the storage charges. Contrary to PTL's view, this evidence, when viewed in the context of all the evidence, does not show that PTL sustained damages.

First, the fact that PTL and Conrail may have expressly agreed to a storage fee of $5.00 per day per trailer does not show that Conrail intended to collect the storage charges from PTL. Significantly, PTL and Conrail apparently did not specifically agree that PTL was liable to Conrail for the storage charges. Indeed, Conrail's subsequent actions show that from the very beginning, Conrail intended to hold only Solar liable for the storage charges. Shortly after Conrail and PTL agreed upon a storage fee, Conrail sent a letter to the president of Solar stating that if Solar did not designate a place of return for the trailers within ten days of the letter, Conrail was going to assess a storage charge of $5.00 per day per trailer. See Exhibit No. 28. Thus, the fact that Conrail and PTL agreed to the amount of a storage fee does not support PTL's claim that it suffered damages by storing the trailers on Conrail's property because this evidence is not probative on the issue of who would be held liable for the storage charges.

Second, the mere fact that Conrail has a receivable listed on its books due from PTL is not enough to demonstrate that PTL was liable to Conrail for the storage charges. There was no evidence to show that PTL acknowledged its alleged debt to Conrail, that PTL has made a payment on this debt, or that PTL ever intends to pay the debt. As the district court aptly noted, PTL has failed to connect adequately this receivable with its allegation that it has suffered damages by storing the trailers on Conrail's property. See Tr. at 495. This open receivable, standing alone, does not support PTL's claim that Conrail intended to collect the storage charges from it.

Finally, although the testimony of a Conrail employee to the effect that Conrail eventually billed PTL for the storage charges may have some probative value on the issue of whether PTL was liable to Conrail for the storage charges, this testimony loses its significance when viewed in the context of all the evidence. The overwhelming evidence presented at trial demonstrated that Conrail expected Solar to pay the storage charges. Conrail sent a letter to Solar, which stated that Conrail would begin to assess storage charges against Solar, if Solar did not designate a place of return. See Exhibit No. 28. Additionally, Conrail sent hundreds of bills to Solar for the storage charges, and Conrail did not concurrently bill PTL. Tr. at 168, 398. When Solar refused to pay the bills, Conrail retained lawyers and collection agencies to aid it in collecting the storage charges from Solar. Id. at 170–71, 360–61, 401–02. Moreover, Conrail eventually filed suit against Solar in order to collect the charges. Id. at 172, 360. In contrast, PTL presented no evidence which tended to show any real collection effort made by Conrail against PTL for the storage charges. Thus, although Conrail may have belatedly billed PTL for the storage charges,[4] this single piece of evidence "los-

---

4. The evidence concerning Conrail's billing of PTL was both insubstantial and unclear. Donald Finnegan, an employee of Conrail in its billing and accounting section, testified that Conrail had billed PTL for the storage charges. Finnegan, however, did not prepare any of the bills or even know when they were sent. See

es its significance when viewed in the context of all the evidence." *Romero*, 92 Ill. Dec. at 299, 484 N.E.2d at 1154; *accord Frisch Contracting Serv.*, 49 Ill.Dec. at 247, 417 N.E.2d at 1074.

Although Conrail may have had the right to charge PTL for storing the trailers on its property, it simply did not do so. The overwhelming evidence presented at trial shows that Conrail intended to hold Solar, and not PTL, liable for the storage charges. Therefore, PTL failed to demonstrate that it sustained damages by storing the trailers on Conrail's property. Because PTL has failed to show damages, a necessary element to its cause of action, the district court properly granted Solar's motion for directed verdict.[5] *See Mielke v. Condell Memorial Hosp.*, 124 Ill.App.3d 42, 79 Ill.Dec. 78, 84, 463 N.E.2d 216, 222 (1984); *Pace v. McClow*, 119 Ill.App.3d 419, 75 Ill.Dec. 836, 840, 458 N.E.2d 4, 8 (1983).

### III

PTL also argues that the district court erred in granting Solar $61,573.31 for costs and attorney fees. PTL claims that the district court allowed Solar to recover costs and attorney fees in relation to parts of the litigation that are not recoverable under Illinois law. Therefore, PTL insists that Solar should not recover any amount, or alternatively, Solar should recover an amount less than $5,000.

Under Illinois law, a litigant is generally not allowed to recover his costs or attorney fees from the other party. *See, e.g., Kerns v. Engelke*, 76 Ill.2d 154, 28 Ill.Dec. 500, 506, 390 N.E.2d 859, 865 (1979); *Losurdo Bros. v. Arkin Distrib. Co.*, 125 Ill.App.3d 267, 80 Ill.Dec. 348, 353, 465 N.E.2d 139, 144 (1984). Provisions in contracts for the award of costs and attorney fees are an exception to this rule. *E.g., Abdul–Karim v. First Fed. Sav. & Loan Ass'n*, 101 Ill.2d 400, 78 Ill.Dec. 369,

374, 462 N.E.2d 488, 493 (1984); *Kaiser v. MEPC Am. Properties, Inc.*, 164 Ill.App.3d 978, 115 Ill.Dec. 899, 902, 518 N.E.2d 424, 427 (1987). Although Illinois courts strictly construe these contractual provisions, *see Wheeling Trust & Sav. Bank v. Citizens Nat'l Bank*, 142 Ill.App.3d 333, 96 Ill.Dec. 587, 591, 491 N.E.2d 866, 870 (1986); *Ferrara v. Collins*, 119 Ill.App.3d 819, 75 Ill.Dec. 319, 323, 457 N.E.2d 109, 113 (1983), the decision to award costs and attorney fees pursuant to a contractual agreement lies within the sound discretion of the trial court, *see Kaiser*, 115 Ill.Dec. at 903, 518 N.E.2d at 428; *Brandt v. Brandt*, 99 Ill.App.3d 1089, 55 Ill.Dec. 78, 93, 425 N.E.2d 1251, 1266 (1981).

Paragraph 4(b) of each lease provides: "[PTL] agrees to pay all costs and expenses incurred by [Solar] in enforcing its rights with respect to the [trailers] or the lease (including actual and reasonable attorney fees) to the extent permitted by law." Exhibit No. 7. Illinois courts have awarded costs and attorney fees based on similarly worded lease provisions. *See Pioneer Trust & Sav. Bank v. Zonta*, 96 Ill. App.3d 339, 51 Ill.Dec. 731, 739–40, 421 N.E.2d 239, 247–48 (1981); *Wanderer v. Plainfield Carton Corp.*, 40 Ill.App.3d 552, 351 N.E.2d 630, 638 (1976).

PTL, however, argues that the district court allowed Solar to recover costs and attorney fees that were not incurred by Solar in enforcing the lease; thus, this lease provision does not cover these expenses. Specifically, PTL claims that Solar's legal expenses incurred in relation to the declaratory judgment count, the second part of Solar's counterclaim seeking damages for repairs, and the inspection of the trailers are not recoverable under the terms of the leases. PTL further argues that at most, Solar's legal expenses incurred on the first part of its counterclaim for rent should be vastly reduced because

---

Tr. at 398–400. Apparently, there was no other evidence of Conrail billing PTL.

**5.** On appeal, PTL also challenges the district court's ruling that it failed to present adequate evidence from which the jury could compute damages. Because we uphold the district

court's determination that PTL has not shown damages, we do not need to reach this other issue. If we were to decide this issue, we undoubtedly would agree with the district court that PTL has not provided a reasonable basis from which the jury could compute damages.

the jury awarded Solar only a small percentage of what it claimed as its damages. We reject these arguments.

First, it is true that fee-shifting agreements like those contained in the leases usually do not apply to declaratory judgments because Illinois courts interpret these actions as declaring rights, as opposed to enforcing them. *See Wheeling Trust & Sav. Bank*, 96 Ill.Dec. at 591, 491 N.E.2d at 870; *Arrington v. Walter E. Heller Int'l Corp.*, 30 Ill.App.3d 631, 333 N.E.2d 50, 60 (1975). However, some legal expenditures, not incurred in enforcing contractual rights, are still recoverable so long as the expenses were made for legal action that is integral to the enforcement of the contract. *See Exchange Nat'l Bank v. Daniels*, 763 F.2d 286, 294 (7th Cir.1985); *Carefree Foliage, Inc. v. American Tours, Inc.*, 153 Ill.App.3d 190, 106 Ill.Dec. 248, 252, 505 N.E.2d 1039, 1043 (1987). In this case, Solar's defense to the declaratory judgment was integral to the enforcement of the lease. PTL sought a declaration that it had terminated the leases at the end of their eight-year terms and that Solar is liable to PTL for storage charges because of Solar's wrongful refusal to designate a place of return for the trailers. *See* Plaintiff's Amended Complaint, Rec. 98, at 2. Clearly, Solar would have to challenge this declaratory judgment count in order to recover any rent due after the expiration of the original eight-year term of the leases (which the jury found Solar was entitled to). Therefore, Solar could recover the costs and attorney fees expended in defending against the declaratory judgment count. *See Carefree Foliage*, 106 Ill.Dec. at 253, 505 N.E.2d at 1044.

Second, we also reject PTL's argument that Solar was not entitled to recover its costs and attorney fees expended in relation to its inspection of the trailers and its counterclaim for repairs. The leases provide that PTL had to return the trailers in "good working order," Exhibit No. 7, and the district court found that PTL's inspection of the trailers was related to Solar's right to have the trailers returned in good working order. *See* District Court's Memorandum Opinion, Rec. 127, at 2. Moreover, the president of PTL testi-

fied that it is standard practice in the termination of leases for trailers that the parties agree to a joint inspection. Tr. at 30–31. Thus, Solar's insistence on inspecting the trailers was at least a colorable right under the lease, and we cannot say that the district court abused its discretion in allowing Solar to recover costs and attorney fees related to this inspection. Additionally, the district court found that Solar's claims and defenses were intertwined. *See* District Court's Memorandum Opinion, Rec. 127, at 2–3. Indeed, it appears that Solar's insistence on inspecting the trailers before it designated a place of return is at the core of this litigation, affecting most of the claims and defenses. Therefore, it was proper to award Solar costs and attorney fees on its counterclaim for costs of repair since the issues "involved in the litigation as a whole were intrinsically related." *Wanderer*, 351 N.E.2d at 638.

Finally, Solar's recovery for legal expenses should not be reduced because the jury granted Solar only a portion of what it claimed as damages for past rent. As the district court noted, the jury was not asked to apportion fault between the parties; it was asked to determine which party breached the lease. *See* District Court's Memorandum Opinion, Rec. 127, at 5. By granting Solar $40,555.75 in damages on its counterclaim for past rent, the jury had to find that PTL breached the lease. Thus, Solar was entitled to costs and attorney fees in enforcing its right to rent under the terms of the leases, and the expenses incurred by Solar in enforcing its right to rent would have been the same regardless of how much the jury granted Solar as damages. Therefore, the district court did not abuse its discretion in awarding Solar $61,573.31 for costs and attorney fees.

## IV

For all the foregoing reasons, the judgment of the district court is

AFFIRMED.